JUDGE KOELTL

07 CV 4835

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
VINCENT DIMICELI,

             Plaintiff,

- against -

GALVEX HOLDINGS LTD., GALVEX TRADE LTD,
GALVEX SERVICES OU, GALVEX ESTONIA OU,
GALVEX INTERTRADE OU, GALVEX CAPITAL
L.L.C., ALVAREZ & MARSAL EUROPE LTD.,
SILVER POINT CAPITAL, L.P., SILVER POINT
EUROPE LLP and SILVER POINT GROUP, LLP,

             Defendants.
---------------------------------------------------------------X

Case No.:

**COMPLAINT**



RECEIVED
JUN 06 2007
U.S.D.C. S.D.N.Y.
CASHIERS

      Plaintiff, Vincent Dimiceli, by his attorneys, Mirabella & Powers, LLC, for his Complaint alleges:

### PARTIES, JURISDICTION AND VENUE

      1.    Plaintiff, Vincent Dimiceli ("Dimiceli"), is an individual who resides at 5 Butternut Road, Randolph, New Jersey 07869.

      2.    Upon information and belief, defendant, Galvex Holdings Ltd., is a Bermuda limited company, with its principal place of business in New York, New York.

      3.    Upon information and belief, defendant, Galvex Trade Ltd, is a Bermuda limited company, with its principal place of business in New York, New York.

      4.    Upon information and belief, defendant, Galvex Services OU, is an Estonia corporation, with its principal place of business in New York, New York.

      5.    Upon information and belief, defendant, Galvex Estonia OU, is an Estonia

corporation, with its principal place of business in New York, New York.

6. Upon information and belief, defendant, Galvex Intertrade OU, is an Estonia corporation, with its principal place of business in New York, New York.

7. Upon information and belief, defendant, Galvex Capital L.L.C., is a Delaware limited liability corporation, with its principal place of business in New York, New York.

8. Upon information and belief, defendant, Alvarez & Marsal Europe, Ltd., is a United Kingdom limited company, with its principal place of business in New York, New York.

9. Upon information and belief, defendant, Silver Point Capital, L.P., is a Delaware limited partnership, with its principal place of business in the State of Connecticut.

10. Upon information and belief, defendant, Silver Point Europe, LLP, is a United Kingdom limited liability partnership, with its principal place of business in London, England.

11. Upon information and belief, defendant, Silver Point Group, LLP, is a United Kingdom limited liability partnership, with its principal place of business in London, England.

12. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332. There is diversity of citizenship between plaintiff and the defendants and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

13. Venue is proper in this district pursuant to 28 U.S.C.A. § 1391. Defendants, Galvex Holdings Ltd., Galvex Trade Ltd, Galvex Services OU, Galvex Estonia OU, Galvex Intertrade OU, and Galvex Capital L.L.C. ("Galvex Group") maintain their principal place of business in this district.

## *CLAIM FOR RELIEF*

14. On December 29, 2004, Dimiceli entered into a written Employment Agreement ("Agreement") with Galvex Group under which defendant, Galvex Group, employed Dimiceli in the capacity of Chief Operating Officer, from a term beginning on the date of said Agreement, until terminated pursuant to the provisions of said Agreement. A copy of the Employment Agreement is annexed hereto as Exhibit A.

15. Under the terms of the Agreement, Galvex Group agreed to pay Dimiceli an annual gross salary of $290,200.00, which was later increased to $360,000.00 during the 2005 calendar year, a car allowance of $8,400.00 per annum, minimum annual bonuses, discretionary bonuses, holiday pay, sick pay, pension benefits, and out of pocket and travel expense reimbursement.

16. Upon information and belief, during October, 2005, Alvarez & Marsal Europe, Ltd. ("A&M") was engaged by Deutsche Bank, a creditor of Galvex Group, to report the internal affairs of Galvex Group and to be responsible for paying any and all liabilities due to the employees of Galvex Group.

17. Upon information and belief, that during November, 2005, Silver Point Capital, L.P., Silver Point Europe, LLP, and Silver Point Group, LLP ("Silver Point"), purchased the debt from Deutsche Bank, and became responsible for paying any liability to employees.

18. That on or about January 16, 2006, the Galvex Group changed control of its ownership and filed for Chapter 11 bankruptcy in the United States Bankruptcy Court/Southern District of New York. Pursuant to paragraph 12.1 of the Agreement, which terms are further defined under paragraph 12.2 of the Agreement, said events terminated the employment of

## *DEMAND FOR JURY TRIAL*

Plaintiff demands trial by jury on all issues so triable.

Dated: Westbury, New York
May 29, 2007

                                    Yours, etc.

                                    MIRABELLA & POWERS, LLC

                                    By: _____
                                       David P. Mirabella, Esq. (DM2485)
                                       *Attorneys for Plaintiff*
                                       1600 Stewart Avenue, Suite 210
                                       Westbury, New York 11590
                                       (516) 467-1258

Case 1:07-cv-04835-JGK    Document 1    Filed 06/06/2007    Page 5 of 17

DATED DECEMBER 29, 2004

---

EMPLOYMENT AGREEMENT

between

GALVEX HOLDINGS LTD.

AND

VINCENT DIMICELI

---

THIS AGREEMENT is made the 29TH day of December, 2004

BETWEEN:

(1) Galvex Holdings Ltd. whose registered office is Chancery Hall, 52 Reid Street, Hamilton Bermuda HM 12 (the "Company") and

(2) Vincent Diminell whose address is 5 Butternut Road, Randolph, New Jersey, NJ, 07869, USA (the "Employee") of the Second Part

IT IS HEREBY AGREED AS FOLLOWS:

1. DEFINITIONS AND INTERPRETATIONS

   1.1. In this Agreement unless the context otherwise requires, the following expressions shall have the following meanings:

      1.1.1. Employers – the following Group Companies to which the Employee provides the services of Employee, in addition to the Company pursuant to the terms of this Agreement, being (a) Galvex Trade Ltd.; (b) Galvex Services OÜ; (c) Galvex Intertrade OÜ; (d) Galvex Estonia OÜ; and (e) Galvex Capital LLC;

      1.1.2. Group Company – any of the Company; the Company's holding company (if any); any subsidiary of the Company or the Company's holding company; any company under common control with any of the aforesaid; and any other company in which the Company is interested whose name is notified to the Employee by the Company as being a member of the Group; and

      1.1.3. Incapacity – any illness or other like cause incapacitating the Employee from attending to his duties for a period of 6 months.

   1.2. Any reference to a statutory provision shall be deemed to include a reference to any statutory modification or re-enactment of it.

   1.3. The headings in this Agreement are for convenience only and shall not affect its construction or interpretation.

   1.4. References to the singular shall include the plural and references to the plural shall include the singular.

2. TERM OF EMPLOYMENT

   The continuation of the employment of the Employee is governed by the terms of this Agreement from the date of this Agreement until terminated pursuant to the provisions of this Agreement.

3. DUTIES

   3.1. The Employee shall during his employment serve the Company and each Employer to the best of the Employee's ability in the capacity of Chief Operating Officer or in such other capacity as the Company or any Employer may from time



to time reasonably determine, given the qualifications and experience of the Employee.

3.2. The Employee shall during his employment under this Agreement carry out the duties specified in Schedule 1 hereto.

3.3. The Employee shall be required to work from the Group's office in New York. The Employee acknowledges that the business of the Company is international and that the Employee shall be required to work in overseas locations from time to time and for such periods as may be determined by the Company.

3.4. At all times and in all respects the Employee shall conform to and comply with the lawful and reasonable directions of the Company.

3.5. During the continuance of his employment hereunder, the Employee shall unless prevented by ill-health or incapacity devote all of his time, attention and abilities during hours of work (which shall be normal business hours and such additional hours as may be necessary for the proper performance of his duties) to the business and affairs of the Company, the Employers and any Group Company for which the Employee performs duties.

3.6. During his employment, the Employee may be seconded to any Group Company for a fixed or variable period of time and upon such terms as may be agreed between the parties.

## 4. REMUNERATION

4.1 The Company and each Employer are jointly and severally liable to pay to the Employee the remuneration and compensation for the services provided by the Employee under this Agreement, as follows:

4.1.1 The remuneration of the Employee from his employment shall be an annual gross salary of US$290,200. The Company shall be responsible for all related costs, including payroll tax, social insurance and hospital levies. The salary shall accrue on a daily basis and be payable by equal monthly instalments in arrears on or about the last business day of every month or as otherwise determined by the Company.

4.1.2 The Company shall provide a car allowance of US$ 6,400 per annum.

4.1.3 The Employee shall be paid a bonus in respect of the year ended 31 December 2005, which bonus shall be paid on or before 31 December 2004 and shall be in an amount to be determined by the Company in its sole and absolute discretion, but in any event the Employee shall receive no less than US$30,000.

4.1.4 In respect of each year after 2005, the Employee may be entitled to a bonus of such amount payable at such times as shall from time to be determined by the Company in its sole and absolute discretion. If the Employee receives any bonus payment, the Company is not obliged to make any further bonus payments and any bonus payment will not be part of the Employee's contractual remuneration or fixed salary. If the Employee's employment terminates (or notice is served to terminate the Employee's employment) for any reason or no reason at all, the Employee will not be entitled to receive any bonus payments in respect of any period.

4.2  The Employee shall, in addition to his fixed salary under clause 4.1.1 and any bonus paid under clauses 4.1.2 and 4.1.3, be entitled to further non-cash benefits as notified by the Company to the Employee from time to time.

4.3  Any minimum agreed bonuses payable under clauses 4.1.2 and 4.1.3 shall be deemed to accrue on a daily basis during the period to which they relate until paid.

4.4  Any of the Company or any Employer may, in its absolute discretion but without affecting it sown joint and several liability for the amounts due under this contract, procure that any payment due to the Employee under this Agreement be paid any other Group Company.

5  **EXPENSES**

The Company and any Employer shall by way of reimbursement pay or procure to be paid to the Employee all reasonable travelling, accommodation and other similar out-of-pocket expenses wholly exclusively and necessarily incurred by him in or about the performance of his duties under this Agreement provided that the Employee if so required by the Company or any Employer provides reasonable evidence of this expenditure in respect of which he claims reimbursement.

6  **PENSION**

The Employee shall be eligible to participate in any pension scheme, including an international pension scheme, which the Company in its absolute discretion may provide from time to time. The Company will contribute 5% of salary under 4.1 to this pension scheme.

7  **HOLIDAYS**

The Employee shall (in addition to statutory holidays) be entitled during the continuance of his employment to 20 working days' paid holiday per holiday year to be taken at such time or times as may be approved in advance by the Company. Holiday entitlement shall be deemed to accrue from day to day. The Company's holiday year runs from 1 January to 31 December.

8  **ILLNESS**

Subject to complying with the Company's procedures relating to the notification and certification of periods of absence from work the Employee shall continue to be paid during absence due to sickness, injury or other incapacity (such payment to be inclusive of any statutory sick pay or benefits to which he may be entitled). If the Employee shall be absent from work due to incapacity, then all obligations to pay the Employee shall cease when the Employee becomes entitled to receive payments pursuant to any long term disability scheme and thereafter any payment will be at the discretion of the Company.

9  **RESTRICTIONS DURING EMPLOYMENT**

During the continuance of his employment under this Agreement, the Employee shall unless prevented by incapacity devote his whole time and attention to the business of the Company and the Employers as shall be required of him and shall not without the prior written consent of the Company:

9.1  engage in any other business; or

9.2 be concerned or interested in any other business of a similar nature to or competitive with that carried on by the Company or a Group Company.

10  **CONFIDENTIALITY**

10.1  The Employee is aware that in the course of employment under this Agreement he will have access to and be entrusted with information in respect of the business and financing of the Company and its dealings and transactions and affairs and likewise with any Group Company all of which information is or may be confidential.

10.2  The Employee shall not (except in the proper course of his duties) during or after the period of his employment under this Agreement divulge to any person whatever or otherwise make use of (and shall use his best endeavours to prevent the publication or disclosure of) any trade secret or secret investment process or marketing strategies and plans or pricing strategies or customer lists or any such confidential information concerning the Company or any Group Company or any of its or their clients, suppliers, agents, distributors or customers.

11  **TERMINATION OF EMPLOYMENT**

11.1  The Company and any Employer are not under any obligation to provide the Employee with any work and the Company may at any time after either party has given notice of termination of employment suspend the Employee and/or exclude the Employee from all or any premises of the Company or Group Company and/or require the Employee not to contact any colleagues or clients and not to access electronic data in the Company's or any Group Company's offices via home computers, modems or otherwise for any period not exceeding the periods set forth herein, provided that except as provided elsewhere herein, the Employee's salary and other contractual benefits shall continue to be paid or provided by the Company and the Employers.

11.2  The employment of the Employee may be terminated by the either party on three months' notice in writing.

11.3  The employment of the Employee may be terminated by the Company without notice or payment in lieu of notice:

   11.3.1  If the Employee is guilty of any gross default or misconduct in connection with or affecting the business of the Company or any Group Company to which he is required to render services; or

   11.3.2  In the event of any serious or repeated breach or non-observance by the Employee of any of the stipulations contained in this Agreement; or

   11.3.3  In the event of a material breach of regulatory requirements or material internal compliance rules consistent therewith; or

   11.3.4  If the Employee has an interim receiving order made against him, becomes bankrupt or makes any composition or enters into any deed of arrangement with his creditors; or

11.3.5   If the Employee is convicted of any criminal offence (other than an offence under road traffic legislation for which a fine or non-custodial penalty is imposed); or

11.3.6   If the Employee dies or cannot work due to incapacity.

11.4   The Company reserves the right to suspend the Employee with pay from his duties in connection with the investigation of summary dismissal grounds.

11.5   Upon the termination of the Employee's employment (for whatever reason and howsoever arising) the Employee shall immediately:

11.5.1   deliver up to the Company all property, documents (including without limitation) notes, memoranda, correspondence and any other material upon which data or information is recorded or stored) and confidential or business information of the Company or any Group Company and/or any of their suppliers, agents, distributors, clients or customers (and the Employee shall not retain any copies of any such documents or information) which is under his control or in his possession; and

11.5.2   repay all outstanding debts or loans due to the Company or any Group Company and the Company is hereby authorised to deduct from any salary/wages of the Employee a sum in repayment of all or any part of such debt or loans.

11.6   Upon the termination of his employment (for whatever reason and howsoever arising), the Employee shall not at any time thereafter make any untrue or misleading oral or written statement concerning the business and affairs of the Company or any Group Company nor represent himself or permit himself to be held out as being in any way connected with or interested in the business of the Company or any Group Company except as a former employee for the purpose of communicating with prospective employers or complying with any applicable statutory requirements.

12   SEVERANCE PAYMENT

12.1   During the currency of this Agreement (which shall include during a period after a notice has been served pursuant to Clause 11.2, but before the date of termination, namely) upon the occurrence of any of the following events:

a.   closure of the office of the Group in New York;
b.   a change in control of the Company or any Group Company;
c.   an insolvency event

such an event shall be deemed to be a summary notice of termination of this Agreement and the employment of the Employee hereunder.

12.2   For the purposes of Clause 12.1:

a.   "change in control" shall mean any of the following events:
   i.   any event the result of which Daniel Bain becomes the beneficial owner of less than 50% of the issued share capital of the Group Companies;
   ii.   Daniel Bain ceases to be the President of the Company; or



Case 1:07-cv-04835-JGK   Document 1   Filed 06/06/2007   Page 12 of 17

    iii.    Daniel Bain, together with the Directors nominated by him comprise less than 60% of the board of Directors of the Company and any Group Company.

  b.  "Insolvency event" shall mean corporate action, legal proceedings or other procedure or step is taken in relation to:

    i.    the suspension of payments, a moratorium of any indebtedness, winding-up, dissolution, administration or reorganisation (by way of voluntary arrangement, scheme of arrangement or otherwise) of any Group Company;

    ii.    a composition, assignment or arrangement with any creditor of any Group Company;

    iii.    the appointment of a liquidator, receiver, administrator, administrative receiver, compulsory manager or other similar officer in respect of any Group Company or any of their assets; or

    iv.    enforcement of any security or charge over any assets of any Group Company,

or any analogous procedure or step is taken in any jurisdiction, and in the case of a legal proceeding initiated by a third party, such legal proceeding is not discharged within 14 days.

12.3    In the event of a deemed termination pursuant to Clause 12.1, the Employee shall be immediately be paid, in respect of such summary termination without cause the following amounts:

    12.3.1    an amount equal to 2 years' salary at the rate then payable to the Employee;

    12.3.2    two times the accrued but unpaid bonus under clauses 4.1.3 and 4.1.4; and

    12.3.3    an amount being two times the last annual bonus actually paid to the Employee (which, for the avoidance of doubt shall not be the amount payable to the Employee under the foregoing clause 12.3.2); and

    12.3.4    an amount representing the costs of medical and health insurance for a 2 year period from the date of termination, which amount will be calculated as being the average cost to the Company in the preceding year, of such insurance maintained on behalf of the Employee.

## 13  RESTRICTIONS AFTER TERMINATION OF EMPLOYMENT

For a period of 6 months after the termination of employment the Employee will not in any capacity, directly or indirectly, be engaged, concerned or interested in any trade, business or occupation of a similar nature or competing in any material aspect of the Company and will not solicit or assist anyone in soliciting any employee of the Company.

## 14  OWNERSHIP OF RIGHTS

14.1    All notes and memoranda concerning the business of the Company or a Group Company or any of their suppliers, agents, distributors, clients or customers

which are received or made by the Employee in the course of his duties under this Agreement will be the property of the Company and must be surrendered by the Employee to the Company at any time and in any event on the termination of the Employee's employment under this Agreement.

14.2 All property, copyright, and other intellectual and proprietary rights in all works and materials (including, without limitation, computer software) developed or written or prepared by the Employee in the course of his duties hereunder shall belong to the Company. To that end, the Employee hereby assigns, by way of future assignment, all such property, copyright, and other rights mentioned above to the Company to hold absolutely unto itself, together with the right to apply for and enforce all such rights. The Employee also unconditionally and irrevocably agrees to give up all moral rights he may have as an author, designer or inventor of any such work or materials.

## 15 ASSIGNMENT

The rights, liabilities and duties under this Agreement may be assigned by the Company to any other Group Company.

## 16 NOTICES

16.1 Any notice required or permitted to be given under this Agreement shall be given in writing delivered personally or sent by first class post pre-paid recorded delivery (air mail if overseas) to the party due to receive such notice at, in the case of the Company (notice to which shall be on behalf of the Company and any of the Employers), its registered office from time to time and, in the case of the Employee, his address set out in this Agreement (or such address as he may have notified to the Company in accordance with this clause).

16.2 Any notice delivered personally shall be deemed to be received when delivered to the address provided in clause 14.1 and any notice sent by pre-paid recorded delivery shall be deemed (in the absence of evidence of earlier receipt) to be delivered 2 days after posting (6 days if sent air mail) and in proving the time of despatch it shall be sufficient to show that the envelope containing such notice was properly addressed, stamped and posted.

## 17 MISCELLANEOUS

17.1 This Agreement is governed by and shall be construed in accordance with the laws of Bermuda.

17.2 The parties irrevocably agree that the Supreme Court of Bermuda shall have jurisdiction to hear and settle any dispute, suit, action or proceeding (together referred to as "Proceedings") which arises out of or in connection with this Agreement, save that nothing contained in this clause limits the right of the Employee to take Proceedings against the Company in any other court of competent jurisdiction.

17.3 This Agreement contains the entire understanding between the parties and supersedes all previous agreements and arrangements (if any) relating to the employment of the Employee by the Company.

SCHEDULE 1

The specified duties of the Employee are as follows:

1. Employing staff as appropriate;
2. Responsible for the Group of Companies;
3. Responsible for sales, operations and finance;
4. Working Capital (accounts receivable & inventories);
5. Fixed assets;
6. Implementation of the annual plan;
7. Implementation of the long term strategic plan;
8. Developing management staff to support the strategic plan;
9. Maximising the profit of the Company; and
10. Liaison with financial institutions;

IN WITNESS WHEREOF this Agreement has been executed as follows:

on behalf of Galvex Holdings Ltd.

_____
By: Daniel Bain

_____
By: Norman Bain

on behalf of Galvex Trade Ltd.

_____
By: Daniel Bain

_____
By: Norman Bain



ANNEX 1

Made and entered into as of this 5th day of January, 2005

To the agreement dated the 29TH day of December, 2004

BETWEEN:

(1) Galvex Holdings Ltd. whose registered office is Chancery Hall, 52 Reid Street, Hamilton Bermuda HM 12 (the "Company") and

(2) Vincent Dimicell whose address is 5 Butternut Road, Randolph, New Jersey, NJ 07869, USA (the "Employee") of the Second Part

IT IS HEREBY AGREED AS FOLLOWS:

1. BONUS

The Employee is entitled to a bonus under clause 4.1.3 of US$ 100,000 for the year ending December 31, 2004.

The bonus is accrued by the Company and payable in the future but payable no later than December 31, 2005.

IN WITNESS WHEREOF this Annex 1 has been executed as follows:

on behalf of Galvex Holdings Ltd.

*[signature: Daniel Bain]*

By: Daniel Bain

*[signature: Norman Bain]*

By: Norman Bain

By Vincent Dimicell

*[signature: Vincent Dimicell]*

In the presence of: Richard Hartley

*[signature]*

Case No.:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT DIMICELI,

                                                                         Plaintiff,

- against -

GALVEX HOLDINGS LTD., GALVEX TRADE LTD,
GALVEX SERVICES OU, GALVEX ESTONIA OU,
GALVEX INTERTRADE OU, GALVEX CAPITAL
L.L.C., ALVAREZ & MARSAL EUROPE LTD.,
SILVER POINT CAPITAL, L.P., SILVER POINT
EUROPE LLP and SILVER POINT GROUP, LLP,

                                                                          Defendants.

## COMPLAINT

**MIRABELLA & POWERS, LLC**
*Attorneys for Plaintiff*
1600 Stewart Avenue, Suite 210
Westbury, New York 11590
(516) 467-1258
fax (516) 745-5688

*PLEASE TAKE NOTICE*
    that the within is a (certified) true copy of a
_____ ☐ NOTICE OF   entered in the office of the clerk of the within named Court on
ENTRY

_____ ☐ NOTICE OF   that an     of which the within is a true copy will be presented for settlement to the
SETTLEMENT       one of the judges of the within named Court on

                                                    Yours, etc.

**MIRABELLA & POWERS, LLC**
*Attorneys for Plaintiff*
1600 Stewart Avenue, Suite 210
Westbury, New York 11590
(516) 467-1258