UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

VINCENT DIMICELI,

                            Plaintiff,

           - against -

GALVEX HOLDINGS LTD., GALVEX TRADE LTD,
GALVEX SERVICES OÜ, GALVEX ESTONIA OÜ,
GALVEX INTERTRADE OÜ, GALVEX CAPITAL
L.L.C., ALVAREZ & MARSAL EUROPE LTD.,
SILVER POINT CAPITAL, L.P., SILVER POINT
EUROPE LLP and SILVER POINT GROUP, LLP,

                            Defendants.

No. 07 Civ. 4835
ECF Case

-----------------------------------------------------------------x


**MEMORANDUM OF LAW OF GALVEX TRADE LTD, GALVEX SERVICES OÜ,
GALVEX ESTONIA OÜ, GALVEX INTERTRADE OÜ, ALVAREZ & MARSAL
EUROPE LTD., SILVER POINT CAPITAL, L.P., SILVER POINT EUROPE LLP AND
SILVER POINT GROUP, LLP IN SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT**


FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
Eric Seiler (ES5437)
Hallie B. Levin (HL1628)
John N. Orsini (JO6329)
1633 Broadway
New York, New York  10019-6708
(212) 833-1100

*Attorneys for Defendants Galvex Trade Ltd,
Galvex Services OÜ, Galvex Estonia OÜ,
Galvex Intertrade OÜ, Alvarez & Marsal
Europe Ltd., Silver Point Capital, L.P., Silver
Point Europe LLP and Silver Point Group,
LLP*


August 20, 2007

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT ........................................................................................................................3

I.     THE COMPLAINT MUST BE DISMISSED FOR LACK
OF SUBJECT MATTER JURISDICTION ........................................................................3

II.    PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF
MAY BE GRANTED AGAINST A&M AND THE SILVER POINT ENTITIES ............5

      A.     Choice of Law Analysis ................................................................................6

      B.     Plaintiff Has Failed to State a Claim Against Silver Point Capital ...........8

      C.     Plaintiff Has Failed to State a Claim Against A&M and Silver Point Europe ........9

III.   THIS COURT LACKS PERSONAL JURISDICTION OVER A&M AND SILVER
POINT EUROPE ....................................................................................................12

      A.     The Court Lacks Personal Jurisdiction Over A&M .................................14

      B.     The Court Lacks Personal Jurisdiction Over Silver Point Europe .........16

CONCLUSION ....................................................................................................................18

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006) ........................................................................... 9

*Adams v. Cape Indus. PLC,*
    [1990] 1 Ch. 433 (C.A. 1989) ........................................................ 10, 11, 12

*Barlow & Ors v. Polly Peck Int'l Fin. Ltd. and Anor.,*
    [1996] B.C.C. 486 (Ch. 1995) ......................................................................... 10

*Bell v. Gordon,*
    No. 05 Civ. 2163, 2005 WL 2087822 (S.D.N.Y. Aug. 30, 2005) ...................... 5

*Berwick v. New World Network Int'l, Ltd.,*
    No. 06 Civ. 2641, 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ............. 13, 14, 15, 16, 17

*Block v. First Blood Assoc.,*
    691 F. Supp. 685 (S.D.N.Y. 1988) ................................................................. 6

*Bresciani v. Leela Mumbai-A-Kempinski Hotel,*
    311 F. Supp. 2d 440 (S.D.N.Y. 2004) ............................................ 12, 13, 15, 16

*Bulger v. Royal Doulton, PLC,*
    No. 05 Civ. 7709, 2006 WL 3771016 (S.D.N.Y. Dec. 19, 2006) ............... 15, 17

*Carden v. Arkoma Assocs.,*
    494 U.S. 185 (1990) ....................................................................................... 4

*Chicago Mill and Lumber Co. v. Boatmen's Bank,*
    234 F. 41 (8th Cir. 1916) ............................................................................... 9

*Country Rock Café, Inc. v. Truck Ins. Exchange,*
    417 F. Supp. 2d 399 (S.D.N.Y. 2006) ........................................................... 4

*Dunlop Pneumatic Tyre Co. Ltd. v. Selfridge and Co. Ltd.,*
    [1915] A.C. 847, 862-63 (H.L.) (appeal taken from C.A.) ............................ 10

*Ford v. C.E. Wilson & Co.,*
    129 F.2d 614 (2d Cir. 1942) .......................................................................... 11

*Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc.,*
    No. 05 CV 7776, 2007 WL 1701813 (S.D.N.Y. June 12, 2007) .................. 6, 7

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
    532 A.2d 983 (Del. Ch. 1987).................................................................................. 8, 9

*Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*,
    456 F. Supp. 831 (D. Del. 1978).............................................................................. 7, 8

*Klonis v. Nat'l Bank of Greece, S.A.*,
    429 F. Supp. 2d 293, 2007 WL 959257 (S.D.N.Y. Mar. 28, 2007)............... 12, 13, 15, 16

*Krivo Indus. Supply Co. v. Nat'l Distillers and Chem. Corp.*,
    483 F.2d 1098 (5th Cir. 1973), *modified on reh'g*, 490 F.2d 916 (5th Cir. 1974)............. 9

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
    918 F.2d 1039 (2d Cir. 1990)................................................................... 13, 15, 16

*LiButti v. U.S.*,
    178 F.3d 114 (2d Cir. 1999)................................................................................ 17

*Minard v. Pareto Partners*,
    No. 04 Civ. 741, 2005 WL 2206783 (S.D.N.Y. Sept. 12, 2005).................................. 4, 5

*Owl Fumigating Corp. v. California Cyanide Co.*,
    24 F.2d 718 (D. Del. 1928), *aff'd*, 30 F.2d 812 (3d Cir. 1929) ................................. 8

*Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.*,
    156 A.D.2d 550, 549 N.Y.S.2d 57 (2d Dep't 1989) ........................................... 11

*Sadesky v. Liberty Chevrolet, Inc.*,
    No. 04 Civ. 1894, 2005 WL 1026326 (S.D.N.Y. May 3, 2005)................................... 5

*Salomon v. A. Salomon & Co., Ltd.*,
    [1897] A.C. 22 (H.L. 1896) (appeal taken from C.A.) .................................... 10

*Schreibeis v. Retirement Plan for Employees of Duquesne Light Co.*,
    No. Civ. A. 04-969, 2005 WL 3447919 (E.D. Pa. Dec. 15, 2005) .................................. 6

*Scruttons Ltd. v. Midland Silicones Ltd.*,
    [1962] A.C. 446, 493-94 (H.L. 1961) (appeal taken from C.A.).................................. 10

*Siam Commercial Bank Public Co. Ltd. v. Bel-Aire Knitworks, Inc.*,
    Nos. 04 Civ. 10319, 05 Civ. 5551, 06 Civ. 1991, 2006 WL 1816327
    (S.D.N.Y. June 28, 2006)..................................................................................... 11

*Solow v. Aspect Res., LLC*,
    No. Civ. A. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004)....................................... 8

*Straker v. Metro. Transit Auth.*,
    333 F. Supp. 2d 91 (E.D.N.Y. 2004) ..................................................................... 6

*Straub Invs., Ltd. v. Tirakian,*
No. 05 Civ. 3299, 2007 WL 295600 (E.D.N.Y. Jan. 29, 2007)......................................4, 5

*Sunnyside Dev. Co., LLC v. Opsys Ltd.,*
No. C 05-0553, 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005)...........................................7

*Tese-Milner v. Ad EFX Promotions, Inc.,*
No. 06 Civ.1630, 2007 WL 196866 (S.D.N.Y. Jan. 26, 2007)...........................14, 15, 17

*United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,*
Nos. 89 Civ 4525, 93 Civ. 8220, 1997 WL 122792 (S.D.N.Y. Mar. 17, 1997)...........4, 5

*Yucyco, Ltd. v. Republic of Slovenia,*
984 F. Supp. 209 (S.D.N.Y. 1997) ................................................................................11

## STATUTES AND RULES

28 U.S.C. § 1332..........................................................................................................3, 4

N.Y. C.P.L.R. § 301............................................................................................................13

N.Y. C.P.L.R. § 302.....................................................................................................13, 14


Fed. R. Civ. P. 4(k)(1)(A) ..............................................................................................12

Fed. R. Civ. P. 12(b)(1)............................................................................................1, 4, 5

Fed. R. Civ. P. 12(b)(2)..........................................................................................1, 16, 17

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 12

Fed. R. Civ. P. 56(e) .......................................................................................................4

Defendants Galvex Trade Ltd, Galvex Services OÜ, Galvex Estonia OÜ, Galvex Intertrade OÜ, Alvarez & Marsal Europe Ltd. ("A&M"), Silver Point Capital, L.P. ("Silver Point Capital"), Silver Point Europe LLP ("Silver Point Europe") and Silver Point Group, LLP ("Silver Point Group")[1] (collectively, the "Silver Point Entities") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Vincent Dimiceli alleges that on December 29, 2004 he entered into an Employment Agreement with the Galvex defendants (deemed the "Galvex Group") to serve as their Chief Operating Officer.[2] Mr. Dimiceli – a resident of New Jersey – now asserts a claim for breach of contract for $893,506.82 in payments allegedly due to him under that Employment Agreement. In addition to seeking payment from these actual *parties* to the contract, however, he also asserts this claim against entities that were *not* parties to the Employment Agreement, and for whom plaintiff has *not* served as an employee: (1) the Silver Point Entities, which, he alleges "purchased the debt" of the Galvex Group; and (2) A&M, which, he asserts, was engaged by "a creditor of the Galvex Group to report the internal affairs of the Galvex Group." Even assuming these facts to be true, as the Court must, plaintiff's Complaint cannot succeed.

---

[1] As set forth in footnote 5 below, no corporate entity associated with Silver Point Capital or Silver Point Europe by the name of Silver Point Group, LLP exists; accordingly the Complaint should be dismissed against that nonexistent entity.

[2] The "Galvex Group" purports to consist of the following entities: Galvex Holdings Ltd., Galvex Trade Ltd, Galvex Services OÜ, Galvex Estonia OÜ, Galvex Intertrade OÜ, and Galvex Capital L.L.C. The instant motion to dismiss is made on behalf of Galvex Trade Ltd, Galvex Services OÜ, Galvex Estonia OÜ, Galvex Intertrade OÜ, but *not* Galvex Holdings Ltd. or Galvex Capital L.L.C. (which are under separate ownership).

*First*, and fatal to this action, defendant Silver Point Capital is a limited partnership, one of whose members is a citizen of New Jersey. Because Mr. Dimiceli is also a resident of that state, this Court lacks subject matter jurisdiction to adjudicate this dispute.

*Second*, plaintiff's claim for breach of contract against the Silver Point Entities and A&M – non-parties to the Employment Agreement – is simply not legally cognizable. Plaintiff has no privity of contract with these entities, and he has failed to allege any specific facts that would allow the law to impose the liabilities and obligations of the Galvex Group on the Silver Point Entities or A&M.

*Third*, the claims against Silver Point Europe and A&M must be dismissed, as they are English entities who do no business in New York sufficient to confer this Court's personal jurisdiction over them pursuant to New York law.

## STATEMENT OF FACTS[3]

Plaintiff, a resident of New Jersey, brings this purported diversity action against ten separate international business entities, many of whom he summarily (and inaccurately) asserts "on information and belief" have principal places of business in New York, New York. (Compl. ¶¶ 1-12).

In substance, plaintiff alleges that on December 29, 2004, he entered into a written Employment Agreement with Galvex Holdings Ltd., Galvex Trade Ltd, Galvex Services OÜ, Galvex Estonia OÜ, Galvex Intertrade OÜ, and Galvex Capital L.L.C. (which plaintiff defines as the "Galvex Group") to serve as their Chief Operating Officer. (*Id.* ¶¶ 1, 13-14). Plaintiff further asserts that "on or about January 16, 2006, the Galvex Group changed control of

---

[3] This statement of facts is based on the allegations of the Complaint, a copy of which is annexed as Exhibit A to the accompanying Declaration of Gay Bronson.

its ownership and filed for Chapter 11 bankruptcy," which, he asserts, terminated his employment with the Galvex Group and triggered certain severance payments and other payments due to him pursuant to the written Employment Agreement. (*Id.* ¶¶ 18-21). Dimiceli claims that $893,506.82 is due to him under that Agreement – severance pay in the amount of $879,948.72, and unpaid salary and travel expenses in the amount of $13,558.10. (*Id.* ¶ 21).

Plaintiff seeks to recover these sums not only from the "Galvex Group," but also from A&M and the Silver Point Entities. (*Id. passim*). In support of these claims, Dimiceli alleges that "during October, 2005, Alvarez & Marsal Europe, Ltd. ('A&M') was engaged by Deutsche Bank, a creditor of Galvex Group, to report the internal affairs of Galvex Group" and that "during November, 2005, Silver Point Capital, L.P., Silver Point Europe, LLP and Silver Point Group, LLP ('Silver Point'), purchased the debt from Deutsche Bank." (*Id.* ¶¶ 16-17). He also summarily asserts that, in these capacities, A&M and the Silver Point Entities somehow became responsible for paying liabilities to employees of the Galvex Group, and that they – in addition to the Galvex Group companies – have separately breached the Employment Agreement. (*Id.* ¶¶ 16-17, 19).

## ARGUMENT

### I.

## THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Mr. Dimiceli, a New Jersey resident, alleges that this Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 – the federal diversity statute. (Compl. ¶ 12). In fact, complete diversity does not exist because one of the limited partners of defendant Silver Point Capital is also a citizen of New Jersey. Accordingly, the Court possesses no subject matter jurisdiction over this dispute and the Complaint must be dismissed.

To establish and maintain federal diversity jurisdiction in accordance with 28 U.S.C. § 1332, the citizenship of the plaintiff in the action must be different from the citizenship of each defendant. *See United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, Nos. 89 Civ. 4525, 93 Civ. 8220, 1997 WL 122792, at *2 (S.D.N.Y. Mar. 17, 1997). As the United States Supreme Court has held, in suits where a limited partnership is a party, the citizenship of all of the limited partnership's general and limited partners must be taken into account for purposes of assessing diversity. *Id.* at *3 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192 (1990)). In other words, the citizenship of a limited partnership "is determined by any state in which any of the partners, including limited partners, reside." *Straub Invs., Ltd. v. Tirakian*, No. 05 Civ. 3299, 2007 WL 295600, at *1 (E.D.N.Y. Jan. 29, 2007); *see Minard v. Pareto Partners*, No. 04 Civ. 741, 2005 WL 2206783, at *2 (S.D.N.Y. Sept. 12, 2005) ("[A] limited partnership has the citizenship of each of its general *and* limited partners.") (internal quotations and citations omitted).

Although plaintiff correctly asserts that Silver Point Capital is a Delaware limited partnership with its principal office in Connecticut, he fails to address the citizenship of each of the general and limited partners of Silver Point Capital. (Compl. ¶ 9). In fact, one of the limited partners of Silver Point Capital, Robert O'Shea, is a citizen of New Jersey. (Declaration of Robert O'Shea ("O'Shea Decl.") ¶¶ 1, 3-8).[4] Mr. O'Shea resides with his family in a home that he owns in New Jersey, he is registered to vote in New Jersey, he pays taxes as a resident of New

---

[4] When resolving jurisdictional issues, the Court may resort to facts not set forth in the Complaint. "When determining whether subject matter jurisdiction exists, a court may properly refer to evidence beyond the pleadings to resolve disputed jurisdictional facts. Thus, the standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under Fed. R. Civ. P. 56(e)." *Country Rock Café, Inc. v. Truck Ins. Exchange*, 417 F. Supp. 2d 399, 402 (S.D.N.Y. 2006) (internal quotations and citations omitted).

Jersey, his car is registered in New Jersey, and his driver's license was issued by New Jersey. (*Id.* ¶¶ 3-7). By any measure, Mr. O'Shea makes his home in the state of New Jersey. (*Id.* ¶ 8). Accordingly, Mr. O'Shea – a limited partner of Silver Point Capital – is domiciled in and a citizen of New Jersey. *See Sadesky v. Liberty Chevrolet, Inc.*, No. 04 Civ. 1894, 2005 WL 1026326, at *2-3 (S.D.N.Y. May 3, 2005); *Bell v. Gordon*, No. 05 Civ. 2163, 2005 WL 2087822, at *2-3 (S.D.N.Y. Aug. 30, 2005).

Because Mr. Dimiceli is also a citizen of that state, (Compl. ¶ 1), diversity is not complete, subject matter jurisdiction does not exist, and the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g.*, *United Nat'l Ins. Co.*, 1997 WL 122792, at *3-4; *Straub Invs.*, 2007 WL 295600, at *1; *Minard*, 2005 WL 2206783, at * 2.

## II.

## PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AGAINST A&M AND THE SILVER POINT ENTITIES

In addition to suffering from the foregoing fatal jurisdictional defect, plaintiff's Complaint also fails to state a claim upon which relief can be granted with respect to defendants A&M and the Silver Point Entities. As described above, Dimiceli seeks to hold these defendants responsible for $893,506.82 in payments allegedly due to him pursuant to his Employment Agreement. (Compl. *passim*). The Employment Agreement provides that each of the Galvex Group entities "are jointly and severally liable to pay to the Employee the remuneration and compensation for the services provided by the Employee under this Agreement." (Employment Agreement ¶ 4.1). However, neither A&M nor any of the Silver Point Entities is a signatory or otherwise a party to the Employment Agreement.

To somehow justify his demand for these contractual payments from non-parties A&M and the Silver Point Entities, Dimiceli alleges that "during October, 2005, Alvarez &

Marsal Europe, Ltd. ('A&M') was engaged by Deutsche Bank, a creditor of Galvex Group, to report the internal affairs of Galvex Group" and that "during November, 2005, [the Silver Point Entities] purchased the debt from Deutsche Bank." (Compl. ¶¶ 16-17). He also asserts, in wholly conclusory fashion, that A&M and the Silver Point Entities became "responsible for paying" liabilities to employees of the Galvex Group and that they, themselves breached plaintiff's Employment Agreement. (*Id.* ¶¶ 16-17, 19).

As set forth below, it is firmly settled under the law of Delaware and England, (the jurisdictions of organization of Silver Point Capital, Silver Point Europe and A&M), that these allegations are not sufficient to state a claim for breach of the Employment Agreement against any of these entities, or to otherwise hold them responsible for payments allegedly due from the Galvex Group pursuant to that Agreement.[5]

## A.   <u>Choice of Law Analysis</u>

A Federal District Court sitting in diversity applies the choice-of-law rules of its forum state. *See Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc.*, No. 05 CV 7776, 2007 WL 1701813, at *7 (S.D.N.Y. June 12, 2007). At best, plaintiff's allegations against the Silver Point Entities and A&M may be construed as a (fatally deficient) attempt to state some manner of "alter ego" or "control liability" claims. In accordance with New York choice of law

---

[5] As described in footnote 1, no entity affiliated with Silver Point Capital L.P. or Silver Point Europe LLP by the name of Silver Point Group, LLP exists. (O'Shea Decl. ¶ 9). Because Silver Point Group, LLP does not exist, the claim against it should be dismissed. *See Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 94 (E.D.N.Y. 2004) (dismissing claim against "Metropolitan Transit Authority" because "no such organization exists" (citing *Block v. First Blood Assoc.*, 691 F. Supp. 685, 697 (S.D.N.Y. 1988) ("nonexistent" parties "should be considered sham parties . . . against whom no cause of action can be stated")); *Schreibeis v. Retirement Plan for Employees of Duquesne Light Co.*, No. Civ. A. 04-969, 2005 WL 3447919, at *4 (E.D. Pa. Dec. 15, 2005) (dismissing claims against "a nonexistent and, therefore, improper party").

regarding such claims, courts will apply the substantive law of the state under which the

allegedly "dominant" corporation is organized.  *See id.* (finding that "[u]nder New York choice

of law principles, the law of the state of incorporation determines when corporate form will be

disregarded," and holding that the substantive law of the state of incorporation of the allegedly-

controlling defendant company governed plaintiff's "alter ego" claims) (internal quotations

omitted); *see Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05-0553, 2005 WL 1876106, at *3

(N.D. Cal. Aug. 8, 2005) (engaging in California choice of law analysis to conclude that the

country of incorporation of the allegedly-dominant company governed "alter ego" claims).

      Here, Dimiceli has summarily asserted that the Silver Point Entities and A&M are

somehow "responsible" for contractual liabilities to employees of the Galvex Group entities.

(*See* Compl. ¶¶ 16-17).  Accordingly, the claims against Silver Point Europe and A&M should

be analyzed under the laws of England (where they are organized), and the claim against Silver

Point Capital, L.P. should be analyzed under the law of Delaware (where it is organized).  (*See*

O'Shea Decl. ¶ 2; Declaration of Shepard C. Spink ("Spink Decl.") ¶ 2; Declaration of Gay

Bronson ("Bronson Decl.") ¶ 2).  Dimiceli has not stated a claim under the laws of either

jurisdiction.[6]

-------------------------------------------

    [6] Indeed, plaintiff has failed to state a claim under the laws of *any* potentially-relevant
jurisdiction.  As set forth in footnote 11, New York law is in accord with the law of England and
Delaware, and accordingly plaintiff has also failed to state a claim under New York law.
Moreover, federal courts have held that "alter ego" or "control liability" claims "can be decided
under the general principles of corporate and agency law, which do not vary significantly from
jurisdiction to jurisdiction."  *See, e.g., Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*,
456 F. Supp. 831, 841 n.17 (D. Del. 1978).

**B.**      **Plaintiff Has Failed to State a Claim Against Silver Point Capital**

Plaintiff alleges that Silver Point Capital "breached the [Employment] contract" and owes him severance and salary payments due thereunder. (Compl. ¶ 19). This claim cannot survive. Under Delaware law a claim for breach on contract requires contractual privity between the parties. *See Solow v. Aspect Res., LLC*, No. Civ. A. 20397, 2004 WL 2694916, at *4 (Del. Ch. Oct. 19, 2004). Since Silver Point Capital is not a party to the Employment Agreement, it cannot be held liable for a breach of that Agreement. *See id.* (dismissing breach of contract claim because defendants "were not parties to the [contract] and are not in privity with [plaintiff]").

In limited circumstances, Delaware courts will hold one entity liable for the obligations of another where, for example, "those in control of the corporate enterprise have not treated it as a distinct legal entity – have ignored the 'corporateness' of the corporation and have themselves treated it has their 'instrumentality.'" *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 987 (Del. Ch. 1987). It is long-settled law, however, that "the loan of money by one corporation to another does not make the borrower the agent of the lender, or the business and acts of the borrower the acts and business of the lender." *Owl Fumigating Corp. v. California Cyanide Co.*, 24 F.2d 718, 720 (D. Del. 1928), *aff'd*, 30 F.2d 812 (3d Cir. 1929). Likewise, "[w]here one corporation is a large creditor of another, the fact that the former takes an active part in the management of the latter to protect its debt does not make it liable for the debts of the debtor company." *Id.*; *see Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F. Supp. 831, 841 (D. Del. 1978) ("The fact that a creditor corporation takes an active part in the management of a debtor corporation does not indicate the necessary control.").

Indeed, in *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983 (Del Ch. 1987), the court specifically addressed whether a creditor who "involved itself in the

management of its troubled debtor is to be held answerable for a liability of that debtor to a third person arising from a breach of contract." *Id.* at 984. The court held that liability would *not* attach, writing that "[w]here . . . the third party creditor became involved with the corporation as the result of an arms-length extension of credit or other arms-lengths transactions and thereafter comes to exercise control over the debtor by reason of a default or threatened default, such a creditor has not been held to thereby assume liability for its debtor's obligations." *Id.* at 989. (citing with approval *Krivo Indus. Supply Co. v. Nat'l Distillers and Chem. Corp.*, 483 F.2d 1098 (5th Cir. 1973), *modified on reh'g*, 490 F.2d 916 (5th Cir. 1974); *Chicago Mill and Lumber Co. v. Boatmen's Bank*, 234 F. 41 (8th Cir. 1916)).

Here, Dimiceli has not alleged *any facts whatsoever* to support his assertion that by purchasing Deutsche Bank's debt of the Galvex Group, the Silver Point Entities gained control over those companies so as to support any argument that they might have become responsible for the Galvex Group's contractual liabilities. He asserts merely that the Silver Point Entities "purchased the debt from Deutsche Bank" and then somehow became responsible for paying liabilities to Galvex Group employees.[7] (Compl. ¶ 17). As a matter of settled Delaware law, this is insufficient to state a claim, and the Complaint against Silver Point Capital should be dismissed accordingly.

## C.    Plaintiff Has Failed to State a Claim Against A&M and Silver Point Europe

English law, which applies to the claims against Silver Point Europe and A&M, is arguably even *more* restrictive than Delaware law in this regard. As in Delaware, it is well-

---

[7] *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss") (internal quotations omitted).

established under English law that the only entities responsible for contractual liabilities are the contracting parties themselves. *See Dunlop Pneumatic Tyre Co. Ltd. v. Selfridge and Co. Ltd.*, [1915] A.C. 847, 862-63 (H.L.) (appeal taken from C.A.) ("strangers" to a contract have no obligations thereunder); *Scruttons Ltd. v. Midland Silicones Ltd.*, [1962] A.C. 446, 493-94 (H.L. 1961) (appeal taken from C.A.) (same).[8]

For more than a century, English courts have strictly adhered to the principle of separation with respect to corporate identity, and have not held parent corporations, subsidiary companies, affiliates or other related entities liable for one another's contractual obligations and duties. *See Salomon v. A. Salomon & Co., Ltd.*, [1897] A.C. 22 (H.L. 1896) (appeal taken from C.A.); *Adams v. Cape Indus. PLC*, [1990] 1 Ch. 433 (C.A. 1989); *Barlow & Ors v. Polly Peck Int'l Fin. Ltd. and Anor.*, [1996] B.C.C. 486 (Ch. 1995). As the *Adams* court noted, "[English] law, for better or worse, recognises the creation of subsidiary companies, which though in one sense the creatures of their parent companies, will nevertheless under the general law fall to be treated as separate legal entities with all the rights and liabilities which would normally attach to separate legal entities." *Adams*, 1 Ch. at 536.

Indeed, as with Delaware law, English law allows piercing of the corporate veil only under exceptional circumstances. Specifically, under English law the legal separation of corporate entities may only be abrogated: (1) where the construction of a particular statute requires the court to treat different group companies as a single economic entity;[9] (2) where there

---

[8] The English authorities cited herein are provided in the accompanying Appendix of English Legal Authorities.

[9] This exception includes provision for the filing of consolidated accounts by groups of companies, or treating separate companies as a single "undertaking" for competition (antitrust)

is an express agency relationship between the entities;[10] or (3) where the plaintiff has alleged

exceptional circumstances indicating that the separate corporate entities are a mere facade that

conceals their true nature. *See id.* at 532-44.

Here, Dimiceli demands payment from Silver Point Europe and A&M on the

grounds that that "during October, 2005, [A&M] was engaged by Deutsche Bank, a creditor of

Galvex Group, to report the internal affairs of Galvex Group" and that "during November, 2005,

[the Silver Point Entities] purchased the debt from Deutsche Bank." (Compl. ¶¶ 16-17).  He

alleges, in wholly conclusory fashion, that as such A&M and Silver Point Europe became

responsible for paying liabilities to employees of the Galvex Group, and that they *independently*

breached the Employment Agreement. (*Id.* ¶¶ 16-17, 19).

These summary allegations simply do not pass muster under English law.[11]  Mr.

Dimiceli has not alleged that A&M or Silver Point Europe were parties to his Employment

---

purposes.  This category accounts for the vast majority of cases in which English courts have
pierced the corporate veil.  *See Adams*, 1 Ch. at 532-39.

[10]  Under English law, agency will not be presumed in the absence of an express agreement.
*See Adams*, 1 Ch. at 536-37.

[11]  New York law is in accord with that of Delaware and England for purposes of this
motion.  To begin with, "[i]t is well established [under New York law] that a plaintiff in a breach
of contract action 'may not assert a cause of action to recover damages for breach of contract
against a party with whom it is not in privity.'"  *Yucyco, Ltd. v. Republic of Slovenia*, 984 F.
Supp. 209, 215 (S.D.N.Y. 1997) (quoting *Perma Pave Contracting Corp. v. Paerdegat Boat &
Racquet Club, Inc.*, 156 A.D.2d 550, 551, 549 N.Y.S.2d 57, 58 (2d Dep't 1989)) (dismissing
breach of contract claim against Slovenia, which participated in the restructuring of former
Yugoslavian debt and agreed to assume a portion of that debt, but was not a signatory to the
contract, was not in privity with the plaintiff creditor, and was not an alter-ego to signatories).
Indeed, under New York law there is "no legal merit" to a lender liability claim where the
allegations show "nothing more than a typical lender-creditor relationship" and "[n]o assumption
of actual, participatory, and total control."  *Siam Commercial Bank Public Co. Ltd. v. Bel-Aire
Knitworks, Inc.*, Nos. 04 Civ. 10319, 05 Civ. 5551, 06 Civ. 1991, 2006 WL 1816327, at * 3
(S.D.N.Y. June 28, 2006); *see Ford v. C.E. Wilson & Co.*, 129 F.2d 614, 617 (2d Cir. 1942).

Agreement. He has not alleged any specific facts to demonstrate that the separate corporate existence of Silver Point Europe or A&M vis-à-vis the actual signatories to the Employment Agreement was a mere facade. Indeed, he has alleged no facts that, as a matter of English law, would permit the contractual obligations of the Galvex Group to be imposed on Silver Point Europe or A&M. *See Adams*, 1 Ch. at 532-44. Accordingly, the claims against these entities should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III.

## THIS COURT LACKS PERSONAL JURISDICTION OVER A&M AND SILVER POINT EUROPE

In addition to the foregoing grounds for dismissal, the claims against A&M and Silver Point Europe should also be dismissed because this Court lacks personal jurisdiction over them.

"A district court sitting in diversity must apply the forum state's law in determining whether it has personal jurisdiction over a defendant." *Berwick v. New World Network Int'l., Ltd.*, No. 06 Civ. 2641, 2007 WL 949767, at *9 (S.D.N.Y. Mar. 28, 2007) (Koeltl, J.).[12] "The Court must determine whether the forum state's law allows the exercise of personal jurisdiction and, if so, whether doing so comports with constitutional due process guarantees." *Id.*[13] The plaintiff bears the burden of demonstrating that the court possesses

---

[12] *See also Bresciani v. Leela Mumbai-A-Kempinski Hotel*, 311 F. Supp. 2d 440, 444 (S.D.N.Y. 2004) (Koeltl, J.) (same); *Klonis v. Nat'l Bank of Greece, S.A.*, 429 F. Supp. 2d 293, 2007 WL 959257, at *5 (S.D.N.Y. Mar. 28, 2007) ("The Federal Rules of Civil Procedure authorize the exercise of personal jurisdiction in federal court over any defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'") (quoting Fed. R. Civ. P. 4(k)(1)(A)).

[13] *See also Bresciani*, 311 F. Supp. 2d at 444.

jurisdiction when a defendant moves to dismiss for lack of personal jurisdiction. *Klonis v. Nat'l Bank of Greece, S.A.*, 429 F. Supp. 2d 293, 2007 WL 959257, at *4 (S.D.N.Y. Mar. 28, 2007).

New York law provides for both general and specific personal jurisdiction. *Berwick*, 2007 WL 949767, at *10 (citing N.Y. C.P.L.R. §§ 301, 302(a)); *Bresciani v. Leela Mumbai-A-Kempinski Hotel*, 311 F. Supp. 2d 440, 444 (S.D.N.Y. 2004) (Koeltl, J.) (same). Pursuant to New York's *general* jurisdiction statute, C.P.L.R. § 301, "a non-domiciliary defendant is amenable to suit in New York courts . . . if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." *Bresciani*, 311 F. Supp. 2d at 444 (internal quotations and citations omitted). "The test for 'doing business' is fact-sensitive, but even fairly substantial contacts can fail to satisfy the statute." *Id.* (internal citations omitted).[14] "Factors to consider in a 'doing business' inquiry include whether the defendant maintains offices and bank accounts, employs agents, and regularly solicits business in New York." *Id.* "As for 'presence,' the non-domiciliary must be present in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* (internal quotations and citations omitted).[15]

New York's long-arm statute, C.P.L.R. § 302(a)(1), authorizes *specific* jurisdiction where the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state," *and* the plaintiff's cause of action "arise[s] from the defendant's specific business transactions in New York." *Berwick*, 2007 WL 949767, at *10

---

[14] *See also Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (same).

[15] *See also Klonis*, 2007 WL 959257, at *5 (same).

(citing C.P.L.R. § 302(a)).[16] "New York courts have held that a claim 'arises from' a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Tese-Milner v. Ad EFX Promotions, Inc.*, No. 06 Civ.1630, 2007 WL 196866, at *5 (S.D.N.Y. Jan. 26, 2007) (internal quotations omitted).

## A.    The Court Lacks Personal Jurisdiction Over A&M

        Applying these standards to A&M, it is clear that this Court lacks both general and specific personal jurisdiction. As reflected in the accompanying Declaration of Shepard C. Spink, Senior Director of A&M, A&M has no office in New York, no employees who work in New York, no bank accounts in New York, and no telephone listing in New York. (*See* Spink Decl. ¶¶ 4-8).[17] A&M has never paid taxes in New York, has no registered agent for the acceptance of service of process in New York, has not registered with the New York Department of State as a foreign corporation doing business in New York, has no clients in New York, solicits no business in New York, and disseminates no marketing materials in New York. (*See id.* ¶¶ 9-14).

        In short, A&M, has none of the contacts with New York traditionally considered indicia of maintaining a "presence" here sufficient to confer general personal jurisdiction. Indeed, courts routinely dismiss claims against defendants that have little or no contacts with, or

---

[16] Although C.P.L.R. §§ 302(a)(2) and (3) provide for specific jurisdiction arising out of tort claims, because plaintiff does not assert a tort claim, these provisions are not implicated.

[17] The court may rely on matters outside the pleadings for purposes of assessing personal jurisdiction. *See Berwick*, 2007 WL 949767, at *9. Where a defendant rebuts a plaintiff's unsupported jurisdictional allegations with "direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction – and the plaintiffs do not counter that evidence – the allegation may be deemed refuted." *Id.* (internal quotations and citations omitted).

presence in, New York. *See, e.g.*, *Bresciani*, 311 F. Supp. 2d at 444-45 (dismissing for lack of

general jurisdiction claims against Indian hotel whose contacts in New York consisted of its

contract with a reservation agency in New York to solicit business, distribute promotional

materials, and receive and process reservations); *Klonis*, 492 F. Supp. 2d 293, 2007 WL 959257,

at *6 (dismissing for lack of personal jurisdiction claims against Greek bank with no office,

property, phone listing, or public relations work in New York); *Landoil Res. Corp. v. Alexander*

*& Alexander Servs., Inc.*, 918 F.2d 1039, 1045-46 (2d Cir. 1990)  (affirming dismissal for lack of

general jurisdiction claims against a United Kingdom insurance broker without a permanent

locale in New York).  As such, this Court lacks general personal jurisdiction over A&M.

Likewise, the Court does not possess specific personal jurisdiction over A&M.

Plaintiff's claim is for breach of his Employment Agreement – an agreement to which A&M is

not a party. (*See* section II.C *supra*; *see also* Spink Decl. ¶ 15).  Plaintiff has not alleged any

specific business A&M has transacted *in New York* (or anywhere else, for that matter) from

which the instant claim might otherwise arise.  Accordingly, this Court lacks specific personal

jurisdiction over A&M, as well.  *See, e.g.*, *Berwick*, 2007 WL 949767, at *9-10 (dismissing for

lack of specific jurisdiction claim against Bahamas company based on CEO's affidavit stating

that the company did not transact business in New York, is not registered to do business in New

York, neither owns no rents property in New York, has no agents or employees in New York,

and receives no revenues from New York); *Tese-Milner*, 2007 WL 196866, at *6 (dismissing for

lack of specific jurisdiction claim against Florida motel where motel accepts reservations from

New York residents through web site, but there was no "articulable nexus" or "substantial

relationship" to the action because plaintiff made the reservation from a telephone in Florida);

*Bulger v. Royal Doulton, PLC*, No. 05 Civ. 7709, 2006 WL 3771016, at *3-6 (S.D.N.Y. Dec. 19,

2006) (dismissing for lack of specific jurisdiction claims against English company where plaintiff made conclusory allegations that defendant transacts business and supplies goods within New York, and made only bare allegations that defendant controlled an American subsidiary, (which were rebutted by defendant's declaration)).

This Court lacks personal jurisdiction over A&M, and plaintiff's claim against it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**B.    The Court Lacks Personal Jurisdiction Over Silver Point Europe**

The analysis of Silver Point Europe's contacts with New York is nearly identical to that of A&M's contacts, and thus it is similarly clear that this Court lacks both general and specific jurisdiction over Silver Point Europe.

As set forth in the accompanying Declaration of Gay Bronson, Silver Point Europe has no offices in New York, no bank account in New York, and no telephone listing in New York. (*See* Bronson Decl. ¶¶ 4-7). Silver Point Europe has never paid taxes in New York, it has no agent for service of process in New York, it has not registered with the New York Department of State as a foreign corporation doing business in New York, has no clients in New York, and disseminates no marketing materials in New York. (*See id.* ¶¶ 8-12). In sum, Silver Point Europe has not engaged in a continuous and systematic course of doing business in this forum, and thus this Court lacks general jurisdiction over it. *See Bresciani*, 311 F. Supp. 2d at 444-45; *Klonis*, 492 F. Supp. 2d 293, 2007 WL 959257, at *6; *Landoil*, 918 F.2d at 1045-46.

Silver Point Europe, like A&M, is not a party to plaintiff's Employment Agreement, (*see* section II.C *supra*; *see also* Bronson Decl. ¶ 13), and plaintiff has not alleged any specific business that Silver Point Europe has transacted *in New York* (or elsewhere) from which his claim might otherwise arise. Accordingly, this Court also lacks specific jurisdiction

over Silver Point Europe. *See, e.g.*, *Berwick*, 2007 WL 949767, at *9-10); *Tese-Milner*, 2007 WL 196866, at *6; *Bulger*, 2006 WL 3771016, at *3-6.

 Because this Court lacks both general and specific jurisdiction over Silver Point Europe, it should dismiss plaintiff's claim against it in accordance with Fed. R. Civ. P. 12(b)(2).[18]

---

[18] If the Court were to conclude that it has either general or specific jurisdiction over either A&M or Silver Point Europe pursuant to New York law, the Court should nevertheless refrain from exercising that jurisdiction because neither defendant has the "minimum contacts" required by the Fourteenth Amendment's Due Process Clause. The Due Process Clause requires that "in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *LiButti v. U.S.*, 178 F.3d 114, 122 (2d Cir. 1999) (court lacked jurisdiction over a Kentucky LLC that entered into a horse syndicate agreement in Kentucky) (internal quotations omitted). Plaintiff has not alleged any such purposeful availment by either A&M or Silver Point Europe of the privilege of conducting activities within New York, or otherwise invoking the benefits and protections of New York's laws.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed pursuant to Federal

Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

Dated:   New York, New York
         August 20, 2007

                                     Respectfully submitted,

                                     FRIEDMAN KAPLAN SEILER &
                                         ADELMAN LLP


                                     Eric Seiler (ES5437)
                                     Hallie B. Levin (HL1628)
                                     John N. Orsini (JO6329)
                                     1633 Broadway
                                     New York, NY 10019-6708
                                     (212) 833-1100

                                     *Attorneys for Defendants Galvex Trade Ltd, Galvex
                                     Services OÜ, Galvex Estonia OÜ, Galvex Intertrade
                                     OÜ, Alvarez & Marsal Europe Ltd., Silver Point
                                     Capital, L.P., Silver Point Europe LLP and Silver
                                     Point Group, LLP*