# Exhibit 3

[HOUSE OF LORDS.]

DUNLOP PNEUMATIC TYRE COMPANY, LIMITED . . . . . . . . . . . . . }  APPELLANTS;      H. L. (E.)*
                                                                                     1915
AND

SELFRIDGE AND COMPANY, LIMITED  .  RESPONDENTS.    *April 26.*

*Contract—Construction—Principal and Agent—Undisclosed Principal—Want of Consideration moving from Principal.*

In 1911 D. & Co., who were motor accessory factors, agreed with the plaintiffs, who were motor tyre manufacturers, in consideration of the plaintiffs' allowing them certain discounts off their list prices, to buy a given quantity of the plaintiffs' goods within a specified time; also not to sell or offer the plaintiffs' goods to any person at less than the plaintiffs' list prices, except that D. & Co. were to be at liberty to allow to genuine trade customers a limited discount off such list prices, and in case of any such sale they agreed, as the plaintiffs' agents, to obtain from the trader a similar undertaking that he would observe the plaintiffs' list prices and to forward such undertaking to the plaintiffs. The plaintiffs exacted similar agreements from all their trade purchasers, and this was known to the defendants, who were large storekeepers and sold tyres by retail to the public.

In January, 1912, the defendants ordered tyres of the plaintiffs' make from D. & Co., and by an agreement purporting to be made between the defendants and D. & Co., in consideration of D. & Co.'s allowing them certain discounts off the plaintiffs' list prices, they agreed (inter alia) not to sell or offer any motor tyres of the plaintiffs' make to any private customer at less than the list prices. The plaintiffs sued the defendants for breach of this contract:—

*Held*, assuming that the plaintiffs were undisclosed principals, that no consideration moved from them to the defendants, and that the contract was unenforceable by them.

*Per* Lord Parmoor: The claim of the plaintiffs to be treated as undisclosed principals was inconsistent with the terms of the contract.

Decision of the Court of Appeal [1914] W. N. 59 affirmed.

APPEAL from an order of the Court of Appeal (1) reversing a judgment of Phillimore J.

The appellants were manufacturers of motor tyres, covers, and tubes, and substantially the whole of their business in these articles was done through the trade. The system of business

* *Present:* VISCOUNT HALDANE L.C., LORD DUNEDIN, LORD ATKINSON, LORD PARKER OF WADDINGTON, LORD SUMNER, and LORD PARMOOR.

(1) [1914] W. N. 59.

Case 1:07-cv-04835-JGK    Document 18-7    Filed 08/20/2007    Page 3 of 20

848                            HOUSE OF LORDS                    [1915]

H. L. (E.)
1915
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
*v.*
SELFRIDGE
AND
COMPANY,
LIMITED.

adopted by the appellants was as follows: They allowed trade purchasers from them certain trade discounts off the list prices of the goods and in consideration thereof they insisted that such trade purchasers should enter into contracts with them whereby the said trade purchasers agreed not to sell to private customers at less than the appellants' current list prices or to trade customers at less than the current list prices after deducting certain discounts, and further agreed, as agents of the appellants, to obtain from sub-purchasers, being trade customers, similar undertakings to observe the appellants' list prices.

The respondents were retailers and storekeepers in Oxford Street, and part of their business consisted in retailing to the public motor tyres, covers, and tubes of various manufacturers (including the appellants). The respondents were aware of the appellants' system of conducting business.

Messrs. A. J. Dew & Co. carried on business in Endell Street, London, as factors and dealers in motor tyres and tubes and other motor accessories.

By an agreement in writing dated October 12, 1911, between Messrs. A. J. Dew & Co. and the appellants, Messrs. A. J. Dew & Co., in consideration of the appellants' allowing them a trade discount of 10 per cent. for prompt monthly payments off their list prices for motor tyres, covers, tubes, and repairs current from time to time, and 25 per cent. off their list prices current from time to time for motor tyre sundries, agreed to purchase Dunlop motor tyres, covers, tubes, and sundries to the net value of 2000*l*. before the expiration of September, 1912, and if the net value of Messrs. A. J. Dew & Co.'s purchases during the above named period amounted to 2000*l*. they were to be allowed a rebate of 9 per cent. on the net amount of cash paid by them. And Messrs. A. J. Dew & Co. further agreed as follows:—

. Not to sell or offer any Dunlop motor tyres, covers, tubes, or sundries to any private customer or to any co-operative society at prices below the appellants' list prices current at the time of sale nor give to any such customer or society any cash or other discounts or advantage reducing the same.

Not to sell or offer any Dunlop motor tyres, covers, tubes, or sundries to any other person, firm, or company at prices less

than the said list prices, but they were to be at liberty to allow to persons legitimately engaged in the motor trade (other than co-operative societies and persons included in the next succeeding clause) a discount not exceeding 10 per cent. off such list prices plus the appellants' authorized scale of rebates on the net value of purchases of such goods, and in the case of any sale of such tyres, covers, or tubes by A. J. Dew & Co. to any such trader they agreed, as agents for the appellants in that behalf, to obtain from such trader a written undertaking that he would similarly observe the appellants' list prices, terms, and conditions of sale current at the time of sale in any resales by him, and they further agreed to forward all such undertakings to the appellants on demand and not to allow such trade discounts to any such person without previously obtaining such written undertaking.

H. L. (E.)
1915
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
v.
SELFRIDGE
AND
COMPANY,
LIMITED.

Not to supply any Dunlop goods to any person whose supplies the appellants requested them to suspend.

To pay the sum of 5l. for each tyre, cover, or tube sold or offered in breach of the conditions of the contract as liquidated damages and not as penalty and without prejudice to any other rights of the appellants under the contract.

On December 22, 1911, the respondents accepted an order from Captain Eustace Jameson for a Dunlop grooved cover at the price of 5l. 10s., and on January 1, 1912, they accepted an order from a Mr. Strauss for a Dunlop steel studded cover at the price of 4l. 10s. These prices were below the prices mentioned in the appellants' current price list. On January 2 the respondents ordered these covers from Messrs. A. J. Dew & Co., who obtained them from the appellants and delivered them to the respondents on the same day. Together with the covers Messrs. A. J. Dew & Co. sent to the respondents a letter enclosing a price maintenance agreement which they requested the respondents to sign. This agreement provided (so far as material) as follows:—

"PRICE MAINTENANCE AGREEMENT
To be entered into by Trade Purchasers of Dunlop Motor Tyres.
"Messrs. Selfridge & Co. to Messrs. A. J. Dew & Co.
                                              "2nd Jan. 1912.
"Dear Sir,
"In consideration of your allowing us a trade discount

H. L. (E.)
1915
——
DUNLOP
PNEUMATIC
TYRE
COMPANY
LIMITED
v.
SELFRIDGE
AND
COMPANY,
LIMITED.
——

of 10 per cent. for prompt monthly payments off the list prices for motor tyres, covers, tubes and repairs contained in the Dunlop Pneumatic Tyre Co.'s list current from time to time . . . .

" (2.) We will not sell or offer any Dunlop motor tyres, covers or tubes to any private customers or to any co-operative society at prices below those mentioned in the said price list current at the time of sale, nor give to any such customer or society any cash or other discounts or advantages reducing the same. We will not sell or offer any Dunlop motor tyres, covers or tubes to any other person, firm or company at prices less than those mentioned in the said price list.

" (5.) We agree to pay to the Dunlop Pneumatic Tyre Co., Ltd., the sum of 5l. for each and every tyre, cover or tube sold or offered in breach of this agreement, as and by way of liquidated damages and not as a penalty, but without prejudice to any other rights or remedies you or the Dunlop Pneumatic Tyre Co., Ltd., may have hereunder."

The agreement was signed about a week later by the respondents' manager and returned to Messrs. A. J. Dew & Co.

In the meantime, namely, on January 3, the respondents delivered to Captain Jameson the cover he had ordered at the price agreed upon.

The respondents subsequently informed Mr. Strauss that they were unable to deliver the cover ordered by him except at the list price of 4l. 17s. 3d., and this cover was debited by the respondents to him at that price on January 22, 1912, and delivered to him on or about that date.

On February 9, 1912, the appellants commenced an action against the respondents for an injunction and damages in respect of the breach of the agreement of January 2, which they claimed to be an agreement made between the respondents and the appellants through Messrs. A. J. Dew & Co. as their agents.

The respondents by their re-amended defence alleged inter alia that the agreement was made between the respondents and A. J. Dew & Co. on their own account and not as agents for the appellants, and that the respondents never contracted with the appellants at all.

H. L. (E.)
1915
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
*v.*
SELFRIDGE
AND
COMPANY,
LIMITED.

Phillimore J. gave judgment for the appellants for 10*l.*, the liquidated damages in respect of the two breaches above mentioned, and granted an injunction restraining the respondents from selling Dunlop motor tyres, covers, or tubes below the appellants' current list prices.

The Court of Appeal (Vaughan Williams, Kennedy, and Swinfen Eady L.JJ.) reversed this decision and gave judgment for the respondents. They held that the contract of January 2 was not a contract between the appellants and the respondents at all, but was a contract between Messrs. A. J. Dew & Co. and the respondents only, and that Messrs. A. J. Dew & Co. were not legally competent at one and the same time to make a contract with the respondents by themselves as principals and as agents of the appellants. They therefore held that the action was not sustainable.

1915. March 23, 25. *Younger*, K.C., and *Disturnal*, K.C., for the appellants. 1. The appellants are undisclosed principals. Although the agreement sued on was addressed to A. J. Dew & Co. they were acting as agents of the appellants and were known by the respondents to be so acting. The fact that the expressed consideration is to be paid by A. J. Dew & Co. does not preclude them from saying that they are agents. An agent may make a payment under a contract out of his own pocket without losing his character as agent: *Phelps* v. *Prothero*. (1)

2. There was in fact a consideration moving from the appellants to the respondents, and this consideration may be proved by parol evidence. These price maintenance agreements deal with proprietary articles, and A. J. Dew & Co., as the respondents well knew, were under contract to the appellants not to supply these articles to trade customers on trade terms except on condition of exacting from those customers an undertaking to observe the appellants' list prices.

The consideration moving from the appellants to the respondents is that the appellants, with the knowledge of the respondents, permit A. J. Dew & Co. to sell tyres to the respondents on favourable terms and that the respondents take advantage of

(1) (1855) 16 C. B. 370.

H. L. (E.)
1915
~~~
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
*v.*
SELFRIDGE
AND
COMPANY,
LIMITED.

those terms. But for the intervention of the appellants the respondents could not have got the goods on those terms at all. And if there is this additional consideration in fact parol evidence of it is admissible, for such evidence does not contradict the contract: *Frith* v. *Frith* (1), approving *Clifford* v. *Turrell*. (2)

Sir Robert Finlay, K.C., Sanderson, K.C., and Herbert L. Tebbs, for the respondents, were not called on.

The House took time for consideration.

April 26. VISCOUNT HALDANE L.C. My Lords, in my opinion this appeal ought to fail.

Prior to January 2, 1912, Messrs. Dew had entered into a contract with the appellants to purchase a quantity of tyres and other goods from them at the prices in their list, in consideration of receiving certain discounts. As part of their contract Messrs. Dew undertook, among other things, not to sell to certain classes of customer at prices below the current list prices of the appellants. They were, however, to be at liberty to sell to a class of customer that included the respondents at a discount which was substantially less than the discount they were themselves to receive from the appellants, but in the case of any such sale they undertook, as the appellants' agents in this behalf, to obtain from the customer a written undertaking that he similarly would observe the terms so undertaken to be observed by themselves. This contract was embodied in a letter dated October 12, 1911.

On January 2 the respondents contracted with Messrs. Dew, in terms of a letter of that date addressed to them, that, in consideration of the latter allowing them discounts on goods of the appellants' manufacture which the respondents might purchase from Messrs. Dew, less, in point of fact, than the discount received by the latter from the appellants, the respondents, among other things, would not sell the appellants' goods to private customers at prices below those in the appellants' current list, and that they would pay to the appellants a penalty for every article sold in breach of this stipulation.

The learned judge who tried the case has held that the respon-

(1) [1906] A. C. 254.         (2) (1841) 1 Y. & C. Ch. 138.

dents sold goods of the appellants' manufacture supplied through Messrs. Dew at less than the stipulated prices, and the question is whether, assuming his finding to be correct, the appellants, who were not in terms parties to the contract contained in the letter of January 2, can sue them.

My Lords, in the law of England certain principles are fundamental. One is that only a person who is a party to a contract can sue on it. Our law knows nothing of a jus quaesitum tertio arising by way of contract. Such a right may be conferred by way of property, as, for example, under a trust, but it cannot be conferred on a stranger to a contract as a right to enforce the contract in personam. A second principle is that if a person with whom a contract not under seal has been made is to be able to enforce it consideration must have been given by him to the promisor or to some other person at the promisor's request. These two principles are not recognized in the same fashion by the jurisprudence of certain Continental countries or of Scotland, but here they are well established. A third proposition is that a principal not named in the contract may sue upon it if the promisee really contracted as his agent. But again, in order to entitle him so to sue, he must have given consideration either personally or through the promisee, acting as his agent in giving it.

My Lords, in the case before us, I am of opinion that the consideration, the allowance of what was in reality part of the discount to which Messrs. Dew, the promisees, were entitled as between themselves and the appellants, was to be given by Messrs. Dew on their own account, and was not in substance, any more than in form, an allowance made by the appellants. The case for the appellants is that they permitted and enabled Messrs. Dew, with the knowledge and by the desire of the respondents, to sell to the latter on the terms of the contract of January 2, 1912. But it appears to me that even if this is so the answer is conclusive. Messrs. Dew sold to the respondents goods which they had a title to obtain from the appellants independently of this contract. The consideration by way of discount under the contract of January 2 was to come wholly out of Messrs. Dew's pocket, and neither directly nor

H. L. (E.)
1915

DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
v.
SELFRIDGE
AND
COMPANY,
LIMITED.

Viscount
Haldane L.C.

H. L. (E.)
1915
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
v.
SELFRIDGE
AND
COMPANY,
LIMITED.

Viscount
Haldane L.C.

indirectly out of that of the appellants. If the appellants enabled them to sell to the respondents on the terms they did, this was not done as any part of the terms of the contract sued on.

No doubt it was provided as part of these terms that the appellants should acquire certain rights, but these rights appear on the face of the contract as jura quaesita tertio, which the appellants could not enforce. Moreover, even if this difficulty can be got over by regarding the appellants as the principals of Messrs. Dew in stipulating for the rights in question, the only consideration disclosed by the contract is one given by Messrs. Dew, not as their agents, but as principals acting on their own account.

The conclusion to which I have come on the point as to consideration renders it unnecessary to decide the further question as to whether the appellants can claim that a bargain was made in this contract by Messrs. Dew as their agents; a bargain which, apart from the point as to consideration, they could therefore enforce. If it were necessary to express an opinion on this further question, a difficulty as to the position of Messrs. Dew would have to be considered. Two contracts—one by a man on his own account as principal, and another by the same man as agent—may be validly comprised in the same piece of paper. But they must be two contracts, and not one as here. I do not think that a man can treat one and the same contract as made by him in two capacities. He cannot be regarded as contracting for himself and for another uno flatu.

My Lords, the form of the contract which we have to interpret leaves the appellants in this dilemma, that, if they say that Messrs. Dew contracted on their behalf, they gave no consideration, and if they say they gave consideration in the shape of a permission to the respondents to buy, they must set up further stipulations, which are neither to be found in the contract sued upon nor are germane to it, but are really inconsistent with its structure. That contract has been reduced to writing, and it is in the writing that we must look for the whole of the terms made between the parties. These terms cannot, in my opinion consistently with the settled principles of English law, be

construed as giving to the appellants any enforceable rights as against the respondents.

I think that the judgment of the Court of Appeal was right, and I move that the appeal be dismissed with costs.

LORD DUNEDIN. (1) My Lords, I confess that this case is to my mind apt to nip any budding affection which one might have had for the doctrine of consideration. For the effect of that doctrine in the present case is to make it possible for a person to snap his fingers at a bargain deliberately made, a bargain not in itself unfair, and which the person seeking to enforce it has a legitimate interest to enforce. Notwithstanding these considerations I cannot say that I have ever had any doubt that the judgment of the Court of Appeal was right.

My Lords, I am content to adopt from a work of Sir Frederick Pollock, to which I have often been under obligation, the following words as to consideration: "An act or forbearance of one party, or the promise thereof, is the price for which the promise of the other is bought, and the promise thus given for value is enforceable." (Pollock on Contracts, 8th ed., p. 175.)

Now the agreement sued on is an agreement which on the face of it is an agreement between Dew and Selfridge. But speaking for myself, I should have no difficulty in the circumstances of this case in holding it proved that the agreement was truly made by Dew as agent for Dunlop, or in other words that Dunlop was the undisclosed principal, and as such can sue on the agreement. None the less, in order to enforce it he must show consideration, as above defined, moving from Dunlop to Selfridge.

In the circumstances, how can he do so? The agreement in question is not an agreement for sale. It is only collateral to an agreement for sale; but that agreement for sale is an agreement entirely between Dew and Selfridge. The tyres, the property in which upon the bargain is transferred to Selfridge, were the property of Dew, not of Dunlop, for Dew under his agreement with Dunlop held these tyres as proprietor, and not as agent. What then did Dunlop do, or forbear to do, in a question with Selfridge? The answer must be, nothing. He did not do

<div style="margin-left: 60%;">
H. L. (E.)

1915

DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
v.
SELFRIDGE
AND
COMPANY,
LIMITED.
</div>

---

(1) Read by Lord Atkinson.

Case 1:07-cv-04835-JGK    Document 18-7    Filed 08/20/2007    Page 11 of 20

856                    HOUSE OF LORDS                [1915]

H. L. (E.)
1915
─────
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
v.
SELFRIDGE
AND
COMPANY,
LIMITED.
─────
Lord Dunedin.

anything, for Dew, having the right of property in the tyres, could give a good title to any one he liked, subject, it might be, to an action of damages at the instance of Dunlop for breach of contract, which action, however, could never create a vitium reale in the property of the tyres. He did not forbear in anything, for he had no action against Dew which he gave up, because Dew had fulfilled his contract with Dunlop in obtaining, on the occasion of the sale, a contract from Selfridge in the terms prescribed.

To my mind, this ends the case. That there are methods of framing a contract which will cause persons in the position of Selfridge to become bound, I do not doubt. But that has not been done in this instance; and as Dunlop's advisers must have known of the law of consideration, it is their affair that they have not so drawn the contract.

I think the appeal should be dismissed.

LORD ATKINSON. My Lords, the action out of which this appeal arises was brought by the appellants against the respondents to restrain the latter from selling or offering for sale certain goods manufactured by the appellants, on terms other than those specified in a certain agreement dated January 2, 1912, alleged to have been entered into between the respondents and the appellants through Messrs. A. J. Dew & Co. as the agents of the latter; and to recover the liquidated damages made recoverable by the terms of this agreement in respect of the breaches thereof complained of, and for an account of the goods sold in violation of the same.

The main facts of the case are undisputed. The appellants are large and well-known manufacturers of motor tyres, covers, and tubes, which are sold to the users of motor cars and other vehicles through their factors, and also through manufacturers of motor cars. Messrs. A. J. Dew & Co. were one of these agents or factors. They, like all the appellants' other agents or factors, entered into an agreement with them styled a price maintenance agreement. The particular agreement in the case of Dew & Co. bore date October 12, 1911. It, in substance, provided that in consideration of being allowed 10 per cent.

discount off the appellants' list prices for motor tyres, covers, and tubes current from time to time, for prompt monthly payment, and a discount of 25 per cent. off appellants' price list for certain other goods therein named, Dew & Co. agreed to purchase from them before the expiration of the month of September, 1912, goods of the above-mentioned character of the net value of 2000*l.*, with a further provision that if these purchases should, during the above-mentioned period, amount to 2000*l.* and all the conditions of the contract be observed by Dew & Co., the appellants should allow them a rebate of 9 per cent. on the net amount of cash paid by them.

H. L. (E.)
1915
DUNLOP PNEUMATIC TYRE COMPANY, LIMITED
*v.*
SELFRIDGE AND COMPANY, LIMITED.

Lord Atkinson.

The only conditions of the contract necessary to refer to are first, a provision that Dew & Co. should not sell or offer for sale any Dunlop motor tyres, covers, or tubes to any other person, firm, or company at prices less than these list prices; but should be at liberty to allow to persons legitimately engaged in the motor trade (other than co-operative societies) a discount not exceeding 10 per cent. off such list prices, plus the authorized scale of rebates on the net values of the purchases of the aforesaid goods, and further, that in case of any sale of any of the said goods to any such traders as aforesaid, Dew & Co. should, as the appellants' agents, obtain from each trader a written undertaking that he would similarly observe the list prices, terms, and conditions of sale on any resales made by him, whether to private customers or other traders, would forward these undertakings to the appellants on demand, and would not allow such trade discounts to any of the persons aforesaid without previously obtaining such a written undertaking; and, second, a condition that Dew & Co. should pay 5*l.* for every tyre, cover, or tube sold or offered for sale in breach of the conditions of the contract.

Now this agreement was an agreement for the sale and purchase of the appellants' goods, with certain contractional restrictions on the purchaser's right of resale. Dew & Co., unless restrained by injunction, could sell the goods they had purchased from the appellants to any sub-vendee on any terms they pleased, subject to this, that they exposed themselves to an action for breach of contract at the appellants' suit if they did not observe the terms of the agreement. But they did not

H. L. (E.)
1915
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
v.
SELFRIDGE
AND
COMPANY,
LIMITED.

Lord Atkinson.

require the special consent of the appellants to any particular resale made in conformity with the terms of the agreement. That consent was given in anticipation the moment the agreement was entered into. Dew & Co. were then clothed with absolute authority to resell on the terms specified in the agreement. The appellants had no power to prohibit or restrain them from doing so. I think it may be fairly assumed that the respondents were aware of the nature of this agreement between Dew & Co. and the appellants.

When one turns to the contract relied upon, namely, the letter dated January 2, 1912, drawn up by Dew & Co., and signed on behalf of the respondents by A. Horsfield, it is clear that Dew & Co. did introduce into it, in substance, all the stipulations they were bound by their contract with their principals to introduce. They did nothing which that contract did not authorize. They merely exercised their right to resell on the terms prescribed. It was contended by the appellants' counsel, as I understood them, that the discount of 10 per cent. having been given to the respondents, it must be taken that the appellants gave a specific and special consent to this particular contract with the respondents, and that that special consent constituted a consideration, moving from the appellants to the respondents, sufficient to support the contract contained in the letter of January 2, 1912 as a contract between the appellants and the respondents. In my opinion that contention is entirely unsustainable.

It was also urged on behalf of the appellants that it was competent for the latter to show that Dew & Co. entered into this contract of January 2, 1912, as agents for undisclosed principals, namely, the appellants in the present action.

Even if that were so, and the appellants were to be treated as parties to the contract contained in this letter, it does not get over the difficulty. The contract is as to them a nudum pactum, since no consideration moves from them to the respondents, or to any other person or body at the respondents' request.

I confess that the inclination of my opinion is that this case comes within the principle of the decision in *Humble* v. *Hunter* (1), and that consistently with the terms of the letter itself the

(1) (1848) 12 Q. B. 310.

appellants cannot claim to be principals on whose behalf Dew & Co. contracted as their agents. Kennedy L.J. has pointed out in his judgment the different stipulations in the contract which are irreconcilable with the supposition that Dew & Co. did not contract as principals. But however this may be, it is, I think, clear that no consideration moved from the appellants to support any contract made with them and the respondents, and I prefer to base my judgment on that ground.

I think, therefore, that the judgment appealed from was right, and this appeal should be dismissed with costs here and below.

H. L. (E.)
1915
——
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
v.
SELFRIDGE
AND
COMPANY,
LIMITED.
——
Lord Atkinson.

LORD PARKER OF WADDINGTON. (1) My Lords, even assuming that the undertaking upon which this action is founded was given by the respondents to Messrs. A. J. Dew & Co. as agents for the appellants, and was intended to enure for their benefit, the appeal cannot succeed unless the undertaking was founded on a consideration moving from the appellants, and in my opinion there was no such consideration. The appellants did not give or give up anything on the strength of the undertaking. They had sold tyres to Messrs. A. J. Dew & Co. on the terms that the latter should not resell them at prices less than those specified in the appellants' price list, except that Messrs. A. J. Dew & Co. were to be at liberty to allow to persons legitimately engaged in the motor trade a certain discount off such price list, if they, as agents for the appellants, obtained from such persons a written undertaking such as that upon which this action is founded. In reselling these tyres to the respondents, and obtaining from the respondents the undertaking in question, Messrs. A. J. Dew & Co. admittedly committed no breach of contract. The sale was, of course, a good consideration for the undertaking moving from Messrs. A. J. Dew & Co., but the appellants, in whose favour the undertaking was given, being in the position of volunteers not parties to the contract of sale, cannot sue on it. The case was argued on behalf of the appellants as though what was done by Messrs. A. J. Dew & Co. would have been unlawful but for the leave and licence of the

(1) Read by Lord Sumner.

H. L. (E.)
1915
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
*v.*
SELFRIDGE
AND
COMPANY,
LIMITED.

Lord Parker of Waddington.

appellants, and that such leave and licence, though general in form, must be taken as given on the occasion of each sale, in consideration of the undertaking. I cannot accept this contention. In the first place, it is wrong to speak of an exception from a restrictive contract as importing any leave or licence at all. But for any contract to the contrary, Messrs. A. J. Dew & Co. were entitled to resell the goods supplied to them by the appellants upon any terms they might think fit, and in reselling as they did there was no breach of any restrictive contract. Even, however, if the sale can be considered as lawful only by licence of the appellants, the licence was given once for all in their contract to Messrs. A. J. Dew & Co., and was not given as part of the terms upon which any particular sale was allowed.

The appeal fails on this ground and should be dismissed with costs.

LORD SUMNER. My Lords, there are two instances of sale and delivery complained of in this case. The steps in the Jameson transaction are as follows. Those in the other, the Strauss transaction, are similar, and need not be analysed. On October 12, 1911, Messrs. Dew & Co., motor accessory factors, contracted with the appellants, the Dunlop Pneumatic Tyre Company, in terms of the latter's price maintenance agreement then current. By this contract Messrs. Dew & Co. became bound, inter alia, to buy from the Dunlop Company motor tyres, covers, tubes, and sundries to the net value of 2000*l.* before the expiration of September, 1912, and the appellants became bound, if the contract continued to subsist, as it did, to sell and deliver such goods up to that value, whenever reasonably required to do so.

On December 21, 1911, a Captain Jameson thought fit to ask the respondents, Messrs. Selfridge & Co., Limited, who are described as wholesale and retail merchants, for their lowest price for a Dunlop motor tyre, grooved and non-skid, 815 by 105. Their answer was that, on receipt of his order, such a tyre would be procured and the price would be 5*l.* 18*s.* 2*d.*, which was the appellants' list price, less 7½ per cent.

On January 1, 1912, Captain Jameson sent to the respondents

an order for the tyre, and also the money for it, and on the same day the order was accepted, and delivery of the tyre was promised for the following day. In fact, on January 2 the respondents ordered this tyre from Messrs. Dew & Co. by telephone. Messrs. Dew & Co., in turn, ordered it by telephone from the appellants; it was delivered by them to Messrs. Dew & Co., and they sent it to the respondents. These were the events of January 2. On the next day the respondents delivered it to Captain Jameson. Of course the respondents did not mention Captain Jameson to Messrs. Dew & Co., nor did Messrs. Dew & Co. mention the respondents to the appellants.

H. L. (E.)
1915
———
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
v.
SELFRIDGE
AND
COMPANY
LIMITED.
———
Lord Sumner.

So far the respondents had signed no price maintenance agreement. They had been pressed to do so, and no doubt knew that the reason why they were being pressed by Messrs. Dew & Co. was because the appellants, in turn, strictly required them to obtain these agreements from those of their customers to whom they sold. Within two or three days of January 3 they did sign such an agreement, dating it January 2, and delivering it to Messrs. Dew & Co., to whom it was addressed, a week or so afterwards. It is for breach of this agreement that the appellants sued.

The parties have been desirous of knowing their reciprocal rights and duties, if any, arising out of this agreement, and have accordingly raised two broad questions : (1.) Is there any agreement between these parties at all ? (2.) If so, is there any consideration moving from the appellants to support it and make it bind the respondents to them ? But for this there would have been a good deal to be said for the proposition that a bargain and sale, clearly complete before this agreement was signed or dated, could be no breach of it, and that the performance of that bargain by delivery of the goods after the price maintenance agreement was made could hardly be a ground for the grant of an injunction.

My Lords, let it be assumed without discussion that the agreement which the respondents signed speaks from its date, January 2. Let it be assumed also that evidence was admissible to add an unexpressed consideration moving from the appellants to the expressed consideration moving from Messrs. Dew & Co. Let it be assumed further (though this is a large assumption) that

H. L. (E.)
1915
---
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
*v.*
SELFRIDGE
AND
COMPANY,
LIMITED.
---
Lord Sumner.

the terms of the instrument do not so designate Messrs. Dew & Co. as the principals and the only contracting parties as to shut out proof that the appellants were their undisclosed principals. After all, what consideration moved from the appellants?

As the point is not insisted on that Messrs. Dew & Co. sold and delivered to the respondents first, and procured their written undertaking only afterwards, I think that Messrs. Dew & Co. exactly performed the conditions of their agreement with the appellants. The firm of Selfridge & Co. was the "trader" within that agreement, and Messrs. Dew & Co. duly obtained that firm's written undertaking to the intent therein described. The undertaking was in the appellants' own form, and Messrs. Dew & Co. did not contract even by implication that the undertaking which they would obtain should be binding.

The respondents signed what they were asked to sign, but nothing precluded them from saying afterwards that it was nudum pactum. At first they thought and said that they were bound, but this did not alter their position or the appellants', or supply a consideration where none existed before. They made no request for the tyre to the appellants, for they did not know that Messrs. Dew & Co. had not got it in stock, or, if they knew, they did not constitute Messrs. Dew & Co. their agents to ask the appellants for it. Messrs. Dew & Co. asked for it by virtue of their agreement to buy up to 2000*l*. worth of goods, and so it was that the appellants delivered it.

Messrs. Dew & Co. did not mention to the appellants that so far no written undertaking had been signed by their customer, and the appellants, knowing nothing, waived nothing. The appellants, as alleged promisees, neither did nor suffered nor forbore anything, nor promised to do any of these things or anything at all, in exchange for the undertaking purporting to be given by the respondents. It was contended that consideration might be found in the fact that the appellants, who could sell or not sell their own proprietary products, as they chose, only enabled the respondents to get the tyres by agreeing to supply Messrs. Dew & Co., and only agreed to supply them on the restrictive terms in question. This breaks down as soon as it is examined. To this transaction the respondents were

strangers. It happened before they received or gave any order. The delivery of the tyres by the appellants was in performance of an obligation unknown to the respondents (though I daresay they could have surmised it if it had been any business of theirs) and prior to their appearance on the scene. In this transaction nothing moved from the appellants to the respondents. It would have been the same if the other firm had not existed. The appellants have sued on a nudum pactum.

My Lords, the appellants' "distributing organization" has been before your Lordships' House before, and I do not suppose you have heard the last of it now. I think it better, accordingly, to express no opinion on any of the other questions that have been raised, since this one decides the case, and the others may occur again. Much may be said both ways on the right of the appellants to come forward as undisclosed principals upon the contract in question. I express no opinion except that I do not wish to be supposed entirely to assent to the broad proposition, apparently suggested in some of the judgments of the Lords Justices, that a contract, in which one and the same party contracts both on his own behalf and for an undisclosed principal, is a legal impossibility. So stated I think the proposition somewhat too wide. If no more is meant than what Swinfen Eady L.J. puts, " where a party contracts in his own name, an undisclosed principal cannot sue on the contract, if the terms are such as import that the person so signing is the real and only principal," it is not open to objection.

I think that the appeal should be dismissed.

H. L. (E.)
1915
DUNLOP PNEUMATIC TYRE COMPANY, LIMITED
v.
SELFRIDGE AND COMPANY, LIMITED.

Lord Sumner.

LORD PARMOOR. My Lords, the main question in this appeal is whether it is competent for the appellants to bring an action to enforce certain conditions in a contract made between the respondents and Messrs. A. J. Dew & Co. The appellants are manufacturers and Messrs. A. J. Dew & Co. are factors and dealers in motor tyres, covers, or tubes. It is the object of the appellants to enforce and maintain certain general conditions and prices in the sale of their motor tyres, covers, or tubes, and it may be assumed that it is important for their business to attain this object.

H. L. (E.)
1915
───
DUNLOP
PNEUMATIC
TYRE
COMPANY,
LIMITED
*v.*
SELFRIDGE
AND
COMPANY,
LIMITED.
───
Lord Parmoor.
───

The appellants are not in form parties to the contract which they seek to enforce. They claim to be undisclosed principals. If they can prove this, they get over the first difficulty. Unless the appellants can prove that they are undisclosed principals, they fail at the outset, since the stipulations which they seek to enforce are not of such a character that a person, not a party to the contract, has a right to bring an action to enforce them.

There is no question that parol evidence is admissible to prove that the plaintiff in an action is the real principal to a contract; but it is also well established law that a person cannot claim to be a principal to a contract, if this would be inconsistent with the terms of the contract itself.

Kennedy L.J. in his judgment in the Court of Appeal states his conclusion that it would be inconsistent with the terms of the contract itself to admit the claim of the appellants to be regarded as undisclosed principals with a consequent right to bring an action to enforce certain of its conditions. I agree with this conclusion, and it is sufficient to dispose of the case. A further difficulty in the way of the appellants is that, apart from any question of form, they cannot show that there is any consideration sufficient to support a contract as between themselves and the respondents. On October 12, 1911, the appellants entered into a contract with Messrs. A. J. Dew & Co. that in consideration of discounts and rebates being allowed off the appellants' current price list they would purchase from the appellants goods to the quantity therein mentioned. There were several conditions attached to the contract, among them the following: "We will, as your agents in this behalf, in the case of any sale of your tyres, covers, or tubes to a trader obtain from such trader a written undertaking that he will similarly observe your list prices, terms, and conditions of sale current at the time of sale in any resales by him."

In accordance with this obligation, Messrs. A. J. Dew & Co. did make a contract with the respondents that they would similarly observe the appellants' prices, terms, and conditions of sale current at the time of any sale by them. There is no dispute that the respondents did not observe the conditions attached to their contract with Messrs. A. J. Dew & Co. The

appellants, in their action, claimed an injunction and damages at the rate of 5*l.* for each and every tyre, cover, or tube sold by the respondents in breach of the said agreement.

I understood Mr. Younger, in his argument on behalf of the appellants, to say that the appellants, under the contract between themselves and Messrs. A. J. Dew & Co. of October 12, 1911, reserved some control over the sale of their goods by Messrs. A. J. Dew & Co. to third parties, and that in this respect there was consideration moving from the appellants to the respondents sufficient to support a contract.

I am of opinion that no such control was reserved to the appellants, and that Messrs. A. J. Dew & Co., without any further authority or licence from the appellants, had a full right, as factors or dealers in the appellants' goods, to sell them to the respondents. It may well be that the appellants under their contract with Messrs. A. J. Dew & Co. have the power to prevent the supply of the appellants' goods to any person whose supplies the appellants request Messrs. A. J. Dew & Co. to suspend, but this is a wholly different proposition from a claim to be entitled to bring an action against the purchasers of goods sold by Messrs. A. J. Dew & Co. in the course of their business.

If Messrs. A. J. Dew & Co. had full power to sell the goods in question to the respondents, as factors or dealers, it is, I think, clear that the appellants were not in a position to give, and did not give, any consideration which could support a contract between themselves and the respondents, and that the action fails.

I abstain from discussing what remedy Messrs. A. J. Dew & Co. might have on their contract with the respondents, or whether the appellants might not have attained their object in some other way; it is sufficient to say that the appellants cannot succeed in their present action and that the appeal fails.

H. L. (E.)
1915
DUNLOP PNEUMATIC TYRE COMPANY, LIMITED
*v.*
SELFRIDGE AND COMPANY, LIMITED.

Lord Parmoor.

*Order of the Court of Appeal affirmed and appeal dismissed with costs.*

*Lords' Journals,* April 26, 1915.

Solicitors for appellants: *John B. & F. Purchase.*
Solicitors for respondents: *Nunn, Popham & Starkie.*