# Exhibit 5

446    HOUSE OF LORDS    **[1962]**

H. L. (Sc.)
1961
——
WHITE AND
CARTER
(COUNCILS)
LTD.
*v.*
McGREGOR.
——
Lord Hodson.
——

repudiation must be treated as if accepted. The respondent resisted the alternative claim on the ground that the sum sued for being a penalty and not liquidated damages the appellants were not entitled to decree therefor.

The only material obligation which the respondent was bound to fulfil was to pay the sum of money claimed and it is difficult to see how damages should be assessed for breach of this obligation. It is, however, unnecessary in view of the opinion I have expressed to consider the question whether the sum claimed is recoverable as a genuine pre-estimate of probable or possible interest in the due performance of the contract or is irrecoverable as a penalty.

I would allow the appeal.

*Appeal allowed.*
*No order as to costs. No disturbance*
*of the award as to expenses in the*
*courts below.*

Solicitors: *Lovell, Son & Pitfield for W. H. Creech & Douglas, Sturminster Newton, Dorset; Fairchild, Greig & Co. for Balfour & Manion, S.S.C., Edinburgh.*

F. C.

———

[HOUSE OF LORDS.]

H. L. (E.)*
1961
Oct. 9, 10,
11, 12, 16;
Dec. 6.
——

SCRUTTONS LTD. . . . . . . APPELLANTS;

AND

MIDLAND SILICONES LTD. . . . . RESPONDENTS.

ON APPEAL FROM MIDLAND SILICONES LTD. *v.* SCRUTTONS LTD.

*Shipping—Bill of lading—Discharge—Limitation of liability—Stevedores engaged by carrier—Action against stevedores for admitted negligence — Whether entitled to protection of limitation — "Carrier"—United States Carriage of Goods by Sea Act, 1936, s. 4 (5)—Carriage of Goods by Sea Act, 1924 (14 & 15 Geo. 5, c. 22), Sch., Art. IV, r. 5.*

———

* *Present:* VISCOUNT SIMONDS, LORD REID, LORD KEITH OF AVONHOLM, LORD DENNING and LORD MORRIS OF BORTH-Y-GEST.

H. L. (E.)

1961
_____

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.
——

*Contract—Implied term—Benefit to third party—Bill of lading—Limitation of liability—Whether protecting stevedores.*

*Contract—Parties—Enforcement by third party—Bill of lading—Limitation of liability—Stevedore sued by goods-owner—Whether protected.*

*Contract—Implied contract—Parties participating in commercial transaction—Bill of lading—Whether protecting stevedores—Whether contract to be implied between shipper and stevedores.*

*Agency—Master as agent of servant or independent contractor—Exceptions clause in contract by master—Whether protecting servant or contractor employed by master.*

*Bailment — Sub-bailment — Stevedores — Delivering goods — Whether bailees.*

*Judicial Precedent—House of Lords decision—How far binding—Ratio decidendi, obscure or too wide — Departure from long-established principle.*

*Judicial Precedent—United States decision—Commercial law—Desirability of uniformity—Hague Rules—U.S. Supreme Court.*

*Judicial Precedent—Australian decision—Commercial law—Desirability of uniformity—Hague Rules—High Court of Australia.*

By a bill of lading which incorporated the United States Carriage of Goods by Sea Act, 1936, and limited to $500 (£179) per package the liability of the carrier in the event of loss, damage or delay, a drum containing chemicals was shipped from America to London. The appellants, who were stevedores engaged by the carrier, while lowering the drum from an upper floor of a dock transit shed on to a lorry, negligently dropped and damaged the drum when delivering it to the consignees in accordance with the bill of lading, causing part (worth £593) of its contents to be lost. The consignees, the respondents, sued the stevedores in tort claiming £593. The stevedores, relying on the bill of lading, claimed that their liability was limited to $500 :—

*Held* (Lord Denning dissenting), that the stevedores were not entitled to rely on the limitation of liability contained in the bill of lading, since—

(1) The word " carrier " in the Act did not include a stevedore (post, pp. 466, 495), and there was thus nothing in the bill of lading which stated or even implied that the parties to it intended the limitation of liability to extend to stevedores (post, p. 474).

(2) The carrier did not contract as agent for the stevedores (post, pp. 466, 474, 495).

(3) There was no implied contract to which the present parties were parties that the stevedores should have the benefit of the immunity (post, pp. 466, 474, 496).

(4) The stevedores were not bailees of the drum, whether sub, bald or simple (post, p. 470).

(5) It is a fundamental principle that only a person who is party to a contract can sue upon it, and a stranger to a contract cannot in question with either of the contracting parties, take advantage of provisions of the contract even where it is clear from the contract that some provision in it was intended to benefit him (post, pp. 467, 473). There is no difference in principle between A

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

promising B to pay C and A promising B that he will not claim that which C ought to pay A (post, p. 494).

*Dunlop Pneumatic Tyre Co. Ltd.* v. *Selfridge & Co. Ltd.* [1915] A.C. 847, 853; 31 T.L.R. 399, H.L.; *Adler* v. *Dickson* [1955] 1 Q.B. 158; [1954] 3 W.L.R. 696; [1954] 3 All E.R. 397, C.A.; *Robert C. Herd & Co. Inc.* v. *Krawill Machinery Corporation* (1959) 359 U.S. 297; [1959] 1 Lloyd's Rep. 305 and *Wilson* v. *Darling Island Stevedoring and Lighterage Co. Ltd.* (1955) 95 C.L.R. 43; [1956] 1 Lloyd's Rep. 346 applied.

*Elder, Dempster & Co. Ltd.* v. *Paterson, Zochonis & Co. Ltd.* [1924] A.C. 522; 40 T.L.R. 464, H.L. distinguished.

Dictum of Scrutton L.J. in *Mersey Shipping and Transport Co. Ltd.* v. *Rea Ltd.* (1925) 21 Ll.L.R. 275, 278, D.C. disapproved.

The only possible rationalisation of *Elder, Dempster & Co. Ltd.* v. *Paterson, Zochonis & Co. Ltd.* (supra) is that it decided that, in the circumstances, the master having signed the bill of lading, the proper inference was that the shipowner received the goods into his possession on the terms of the bill of lading, although he was not a party to the bill of lading (post, pp. 470, 480, 494).

*Per* Viscount Simonds. A decision of the House of Lords will not be read as departing from long-established principle unless such an intention is made abundantly clear by the majority of the Lords participating in it (post, p. 469, and see *per* Lord Morris, post, p. 494).

*Per* Lord Reid. There are at least three classes of case where the House of Lords are entitled to question or limit a previous ratio decidendi of the House: (1) where it is obscure and (2) where it is out of line with other authorities (as in that case); and also (3) where it is much wider than was necessary for the decision.

Decision of the Court of Appeal [1961] 1 Q.B. 106; [1960] 3 W.L.R. 372; [1960] 2 All E.R. 737, C.A. affirmed.

APPEAL from the Court of Appeal (Hodson, Pearce and Upjohn L.JJ.).

This was an appeal brought by leave of the Court of Appeal from an order of that court dated June 2, 1960, dismissing with costs an appeal by the appellants, Scruttons Ltd., who were the defendants in the action, from an order of Diplock J. in the Queen's Bench Division (Commercial List) dated April 28, 1959, directing that judgment be entered for the respondents, Midland Silicones Ltd., who were the plaintiffs in the action, for the sum of £620 15s. 8d., being the sum of £593 12s. 2d. in respect of damages and the sum of £27 3s. 6d. interest thereon.

The respondents began the present proceedings by writ issued against the appellants on April 14, 1958. They alleged that the appellants' servants, while loading onto a lorry a drum containing 425 lbs. of D.C. diffusion pump fluid belonging to them, negligently damaged it. In their points of defence the appellants

**A.C.**        AND PRIVY COUNCIL.        449

admitted the negligence complained of, but claimed that they
were entitled to limit their liability to the same extent as were
United States Lines, the carriers under a bill of lading on the
terms of which the respondents were the consignees of the drum.

At all material times the appellants were employed by United
States Lines as their stevedores in London under a stevedoring
contract dated August 16, 1952. That contract contained the
following provision: " *Ship, Cargo and Property Claims.* The
" stevedores are to be fully responsible for any damage to
" the vessel or other property and any damage to or loss of cargo
" while being handled or stowed, unshipped or delivered, or while
" in stowage, if damage caused by any negligence of themselves
" or their servants. The stevedores to have such protection as is
" afforded by the terms, conditions and exceptions of the bills of
" lading westbound and eastbound." There was a further pro-
vision: " *Liability for Declared Value Including Ad Valorem*
" *Packages.* For an additional charge of ¼ per cent. on the total
" of the stevedores' discharging, loading and tallying accounts
" (excluding direct expenses and management fund charge) the
" stevedores agree to effect an insurance policy on Lloyds to cover
" any damage or loss of cargo on which a value in excess of $500
" per package has been declared." The respondents were not at
any time aware of the existence or of the terms of the stevedoring
contract.

On or about March 26, 1957, Dow Corning Corporation of New
York shipped the drum in question on the *American Reporter* for
carriage from New York to London under a bill of lading of that
date by the terms whereof the drum was consigned to the respon-
dents. The respondents were at all material times the owners
of the drum, having bought it on c.i.f. terms from the corporation
under a contract made on or about February 4, 1957, and having
received the bill of lading on or about April 1, 1957. The bill of
lading was signed on behalf of United States Lines, the owners
of the ship. It was in the United States Lines' " short form "
and incorporated the United States Lines' regular " long form "
bill of lading. It was further expressly made subject to the
United States Carriage of Goods by Sea Act, 1936, whereby the
United States adopted the Hague Rules with certain modifications.

By section 1 (*a*) of the Act: " The term ' carrier ' includes the
" owner or the charterer who enters into a contract of carriage
" with a shipper."

By section 4 (5): " Neither the carrier nor the ship shall in
" any event be or become liable for any loss or damage to or

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

H. L. (E.)
1961
——
MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.
——

" in connection with the transportation of goods in an amount
" exceeding $500 per package lawful money of the United States,
" or in the case of goods not shipped in packages, per customary
" freight unit, or the equivalent of that sum in other currency,
" unless the nature or value of such goods has been declared by
" the shipper before shipment and inserted in the bill of lading."
    By clause 1 of the " short form " bill of lading: " It is agreed
" that the receipt, custody, carriage, delivery and transhipping of
" the goods are subject to the terms appearing on the face and
" back hereof and also to the terms contained in the carrier's
" regular long form of bill of lading used in this service . . . which
" shall be deemed to be incorporated in this bill of lading, which
" shall govern the relations, whatsoever they may be, between
" shipper, consignee and the carrier, master and ship in every
" contingency wheresoever and whensoever occurring and whether
" the carrier be acting as such, or as bailee, and also in the event
" of deviation or of conversion of the goods." Clause 2 incor-
porated the Carriage of Goods by Sea Act in terms identical with
those of clause 1 of the " long form " of bill of lading.
    By clause 1 of the " long form " bill of lading: " This bill of
" lading shall have effect subject to the provisions of the Carriage
" of Goods by Sea Act of the United States, approved April 16,
" 1936, which shall be deemed to be incorporated herein, and
" nothing herein contained shall be deemed a surrender by the
" carrier of any of its rights, immunities or limitations or an
" increase of any of its responsibilities or liabilities under the
" said Act. If any term of this bill of lading be repugnant to
" the said Act to any extent, such term shall be void to that
" extent but no further. . . .  The provisions stated in the said
" Act . . . shall govern before the goods are loaded on and after
" they are discharged from the ship and throughout the entire
" time the goods are in custody of the carrier."
    By clause 4: " If the ship is not owned by or chartered by
" demise to the United States Lines Co. this bill of lading shall
" with respect to the carriage, custody and care of the goods while
" aboard the ship or on her tackles have effect only as a contract
" between the shipper, consignee and the owner of the ship or
" demise charterer as the case may be, as principal made through
" the agency of the said company, which shall be under no liability
" whatsoever for loss of or damage to the goods or with respect
" to such carriage, custody and care of the goods. If it shall be
" adjudged that the United States Lines Co. or any person other

" than the owner or demise charterer is the carrier or bailee of
" the goods, all rights, exemptions, immunities and limitations
" of liability provided by law and all terms of this bill of lading
" shall be available to it or such other person."

By clause 8: " The carrier or master, in its or his discretion,
" at any time and place, whether or not the reason for its or
" his action or inaction was known at the time of receipt of the
" goods, without notice (a) may substitute another ship, whether
" operated by the carrier or others, or of a different flag, type or
" speed, or whether before, during or after loading the goods or any
" part thereof, and whether the substituted ship arrives or
" departs or is scheduled to do so before or after the ship named
" herein; (b) may, in case the goods or any part thereof are shut
" out, have the ship proceed without the goods or any part thereof
" and the goods may be forwarded in whole or in part by any
" means; (c) may, if the goods or any part of them are damaged
" or lost or in danger of damage or loss or of becoming worthless
" or subject to charges disproportionate to their value, or because
" of their condition, take any measures to salve, protect, recon-
" dition, recover possession of, sell, return to shipper, hold, store
" or otherwise deal with or dispose of the goods or any part of
" them, or forward the goods or any part of them by any means
" to or toward port of discharge; and (d) may, if there shall be
" a forced interruption, abandonment or frustration of the voyage
" at the port of loading or elsewhere or because of the need of
" repair of the ship or of the inability of the ship to promptly
" prosecute the voyage at the port of loading or elsewhere, sub-
" stitute another vessel or may forward the goods or any part
" thereof by any means."

By clause 17: " The port authorities are hereby authorised to
" grant a general order for discharging immediately on arrival of
" the ship and the carrier or master . . . may discharge the goods
" . . . directly they come to hand, upon any dock, wharf, craft
" or place continuously . . . and the carrier and master have the
" right to appoint stevedores, master porters or other agents and
" the consignee shall receive and take delivery from ships' tackles
" or elsewhere as required by the carrier or master . . ."

By clause 24: " In the event of any loss, damage or delay to
" or in connection with goods exceeding in actual value $500 per
" package lawful money of the United States, or in the case of
" goods not shipped in packages, per customary freight unit, as
" the case may be, the carrier's liability, if any, shall be deter-
" mined on the basis of a value of $500 per package or per

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
v.
SCRUTTONS
LTD.

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

———

" customary freight unit unless the nature and a higher value
" shall be declared by the shipper in writing before shipment and
" inserted in the bill of lading. . . . It is agreed that the meaning
" of the word ' package ' includes . . . pieces and all articles of
" any description except goods shipped in bulk."

The shipper did not declare the value of the drum to the
carrier, and its value was not inserted in the bill of lading. The
drum was dealt with as ordinary cargo, both by the carriers and
the appellants. It was duly carried to London. The appellants
duly discharged the ship and put the drum in a shed. The
respondents sent a lorry to take delivery of the drum. The appel-
lants were lowering the drum onto the lorry when they negligently
dropped it and some of the contents worth considerably more than
$500 was lost. The respondents now sued the appellants for the
full value.

*Eustace Roskill Q.C.* and *S. O. Olson* for the appellant com-
pany. This is a test case, since questions of this kind often arise.
The substance of the appellants' argument is as follows: (1) At
all material times United States Lines were bailees of the drum
from the respondents as bailors on the terms of the bill of lading.
(2) The terms of the contract of bailment between the parties
were contained in or evidenced by the bill of lading; the contract
was in force at all material times and in particular at the moment
the damage was caused. (3) That contract, so contained or
evidenced, contemplated vicarious performance by United States
Lines of various of its obligations under the contract of carriage,
for example, substituted performance, transhipment, stevedoring.
(4) The appellants were at all times the agents or sub-bailees of
United States Lines to perform part of the obligations of United
States Lines to the respondents under the contract, namely, the
discharge and ultimate delivery of the drum. (5) In that capacity
as agents or sub-bailees in the course of their employment the
appellants negligently dropped and damaged the drum. (6)
United States Lines were by common consent entitled to limit
their liability to $500 under clause 24 and, had they been sued
on the contract, that was the limit which the respondents could
have recovered against them. (7) The appellants as agents or
sub-bailees are entitled to the same rights of limitation as United
States Lines, because the act complained of was done in the
course of delivering the goods under the bill of lading, which
provided that United States Lines were not to be liable for more
than $500 worth of damage. The appellants were rendering the

**A.C.**                    AND PRIVY COUNCIL.                    453

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

very services provided for in the bill of lading. Accordingly the limitation of liability contained in it must operate, whatever the form of action and whether the shipowner or the stevedore be sued: see *Elder, Dempster & Co. Ltd.* v. *Paterson, Zochonis & Co. Ltd.*[1] The appellants rely on the fact that the contract could be carried out vicariously.

The *Elder, Dempster* case,[2] which binds the House to decide in the appellants' favour, is relied on in four ways: (1) Every servant or agent of a master or a principal performing his master's or his principal's obligations under a contract, which accords to the master or principal an exemption from liability for negligence, is entitled to the same protection as the master or principal. *Adler* v. *Dickson*[3] was wrong and so was *Cosgrove* v. *Horsfall*.[4]

(2) The same proposition applies to carriage of goods by sea. On any view, this is clearly supported by the *Elder, Dempster* case[5] and is founded on the fact of an agent or sub-contractor being the agent of the carrier. The word " agent " is used here as meaning someone who is performing the obligations of another under a contract but who is not his servant. It was not contemplated that there should be continuous personal performance of the contract by the carriers, and the cargo owners have no greater rights against anyone who performs the carriers' obligations than they would have against the carriers themselves. That must be contemplated by the contract; the appellants do not rest on any implied contract. It would be inconsistent and illogical to allow to a substituted or vicarious carrier the protection of the carrier's bill of lading and to deny it to a person performing another part of the contract, that is, discharging the ship and delivering the goods to the cargo owner.

(3) On principle and on authority it is hard to see why the application of the *Elder, Dempster* case[5] should be limited to cases of bailment.

(4) The appellants pray in aid *Pyrene Co. Ltd.* v. *Scindia Navigation Co. Ltd.*[6] The consensual basis to the whole transaction on the side of the shipowners and on the side of the cargo owners is that the terms regulating the carriage and delivery of the goods from the beginning to the end of the contract of carriage are

---

[1] [1924] A.C. 522, 547–548; 40 T.L.R. 464, H.L.
[2] [1924] A.C. 522.
[3] [1955] 1 Q.B. 158; [1954] 3 W.L.R. 696; [1954] 3 All E.R. 397, C.A.

[4] (1945) 175 L.T. 334; 62 T.L.R. 140, C.A.
[5] [1924] A.C. 522.
[6] [1954] 2 Q.B. 402; [1954] 2 W.L.R. 1005; [1954] 2 All E.R. 158.

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

the terms contained in or endorsed on the bill of lading, and the parties have no greater rights than those contained in it. The decision of the present case does not involve overruling any previously decided English case, though it does involve not following *Robert C. Herd & Co. Inc.* v. *Krawill Machinery Corporation* [7] and *Wilson* v. *Darling Island Stevedoring and Lighterage Co. Ltd.*,[8] which are based on a misreading of the *Elder, Dempster* case.[9] The appellants' submission has commercial convenience to recommend it. It prevents people going behind their contracts to proceed against the individual tortfeasors.

It is further submitted: (a) On the true construction of the bill of lading, the Hague Rules and the United States Act, the word "carrier" includes stevedores. (b) On this particular bill of lading there is an express or implied contract between the respondents and the appellants made through the agency of United States Lines whereby it was impliedly agreed that the appellants should have the benefit of the limitation. (c) Relying on the view of Denning L.J. in *Smith and Snipes Hall Farm Ltd.* v. *River Douglas Catchment Board*,[10] it is submitted that the appellants were parties interested in the performance of this bill of lading contract, that it was intended that they should be protected by the bill of lading exemption and that they were entitled to use the $500 limitation at least as a shield if not as a sword. It provides them with a defence. If A contracts with B to do something for C's benefit, C can sue to enforce the contract, although not a party to it, quite apart from any question whether C is A's undisclosed principal or a beneficiary under a trust of which A is a trustee.

In the matter of a carrier's liability one should distinguish between passengers and goods. The common law has leant more heavily in favour of goods than of passengers. There is an absolute warranty of seaworthiness in the case of goods but not of passengers. On these two points the law has always been different.

Rowlatt J. tried the *Elder, Dempster* case [11] at first instance. His decision was affirmed by the Court of Appeal,[12] whose decision was reversed by the House of Lords.[13] The full text of the bills

[7] (1959) 359 U.S. 297; [1959] 1 Lloyd's Rep. 305.
[8] (1955) 95 C.L.R. 43; [1956] 1 Lloyd's Rep. 346.
[9] [1924] A.C. 522.
[10] [1949] 2 K.B. 500; 65 T.L.R. 628; [1949] 2 All E.R. 179, C.A.
[11] (1922) 12 Ll.L.R. 69.
[12] [1923] 1 K.B. 420.
[13] [1924] A.C. 522.

of lading in that case is found at pp. 114 et seq. and 124 et seq. of the appendix to the printed case on the appeal to the House of Lords.   One bill of lading was signed by P. Bedford as " master " and the other by him as " agent."  Elder, Dempster & Co. Ltd. were the time charterers.  The master was not their servant but he acted as their agent, though he was the servant of the shipowners.  The contract was between the cargo owners and the time charterers.   In the bills of lading there was no express protection for the shipowners, but the exemptions in favour of the carriers covered everyone concerned on the carriers' side, including the stevedores, the master or the engineers.   What Scrutton L.J. said in his dissenting judgment in the Court of Appeal [14] was right, and on that basis the appellants here are entitled to succeed.   See also the footnote at p. 422.   The effect of the *Elder, Dempster* case [15] was that, even if there is no general exception to the rule that one who is not a party to a contract cannot sue to enforce it, the case of carriage of goods by sea provides an exception to every person who is a servant or agent of a contracting party.  It is inconceivable that Lord Sumner and Lord Dunedin, who were parties to *Dunlop Pneumatic Tyre Co. Ltd.* v. *Selfridge & Co. Ltd.*,[16] should have thought that in *Elder, Dempster* [17] they were deciding anything inconsistent with it.  What Diplock J. said in the present case [18] ignores a vital passage in Lord Cave's opinion in *Elder, Dempster*.[19]   That case is a direct decision of the House of Lords expressly affirming what Scrutton L.J. had said in the Court of Appeal.   In the House of Lords there was no difference between Lord Cave's approval and Lord Finlay's.   The decision lays down that in the case of carriage of goods by sea (and this applies also to carriage by land and air), where a person who is a party to a contract has an express exemption in his favour in respect of his negligence, those performing the contract on his behalf, whether his servants or not, are entitled to the same exemption.   There is no distinction in principle between suing an employer direct on the ground of respondeat superior and suing his servant direct.

Reliance is placed on *Mersey Shipping and Transport Co. Ltd.* v. *Rea Ltd.*[20] and *The Kite*.[21]  The point of *Vita Food Products*

H. L. (E.)

1961

────

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

────

---

[14] [1923] 1 K.B. 420, 440–441.
[15] [1924] A.C. 522.
[16] [1915] A.C. 847; 31 T.L.R. 399, H.L.
[17] [1924] A.C. 522.

[18] [1959]  2  Q.B.  171,  186–187; [1959] 2 W.L.R. 761; [1959] 2 All E.R. 289.
[19] [1924] A.C. 522, 528–529.
[20] (1925) 21 Ll.L.R. 375, 378, D.C.
[21] [1933] P. 154; 49 T.L.R. 525.

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

*Inc.* v. *Unus Shipping Co. Ltd.*[22] was very far removed from the present case. This was not a third party case at all.

In *Cosgrove* v. *Horsfall*,[23] which was wrongly decided, *Elder, Dempster*[24] was not cited. The court there was wrong in refusing to find any agency at all. It is reasonable and necessary to imply an authority in an employer to protect his employees against liability incurred in the course of their employment. That case is the high-water mark against the present appellants. As to *Elder, Dempster*,[24] see also *White* v. *John Warwick & Co. Ltd.*[25] See also *Alsey Steam Fishing Co. Ltd.* v. *Hillman (Owners). The Kirkness.*[26]

If cargo owners agree that stevedores should do the work provided to be done by the shipowners or their agents, then the implication is that it is to be done on terms that the liability of the shipowners' agents shall be no greater than that of the shipowners.

It is when he comes to deal with *Elder, Dempster*[27] that Fullager J. in *Wilson* v. *Darling Island Stevedoring and Lighterage Co. Ltd.*[28] starts to go wrong. The majority in that case support a rigid theory which would make it impossible for a contractor ever to protect his servants or agents. The view of the minority was right.

In *Robert C. Herd & Co. Inc.* v. *Krawill Machinery Corporation*[29] the case of *Elder, Dempster*[30] is dismissed in half a page of the report and its effect was misstated and misunderstood. See also *A. M. Collins & Co.* v. *Panama R. C.*,[31] where even in the majority judgments *Elder, Dempster*[32] was not cited.

Reliance is placed on Salmond on Torts, 9th ed., pp. 10–11, as to the concurrence of tort and breach of contract. The passage was repeated in the 11th ed., pp. 9–11. There is nothing helpful in Winfield on Torts, but see Anson on Contracts, 21st ed., pp. 159–160, and Cheshire and Fifoot on the Law of Contract, 5th ed., p. 370.

It is not necessary for the appellants to go as far as the way of putting the decision in *Elder, Dempster*[32] adopted in *Mersey*

[22] [1939] A.C. 277, 300–301; 55 T.L.R. 402; [1939] 1 All E.R. 513, P.C.
[23] 175 L.T. 334.
[24] [1924] A.C. 522.
[25] [1953] 1 W.L.R. 1285, 1294; [1953] 2 All E.R. 1021, C.A.
[26] [1957] P. 51, 64–67; [1957] 2 W.L.R. 20; [1957] 1 All E.R. 97.

[27] [1924] A.C. 522.
[28] 95 C.L.R. 43, 68–69; [1956] 1 Lloyd's Rep. 346, 358.
[29] 359 U.S. 297; [1959] 1 Lloyd's Rep. 305.
[30] [1924] A.C. 522.
[31] (1952) 197 F. 2d 893.
[32] [1924] A.C. 522.

**A.C.**　　　AND PRIVY COUNCIL.　　　457

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

*Shipping and Transport Co. Ltd.* v. *Rea Ltd.*[33] But in the case of carriage of goods by sea there is an exception to *Dunlop's* case.[34] There should be a clear recognition of the doctrine that in the case of carriage of goods by sea, where cargo owners make a contract with the carrier, with whom there is privity of contract, and the contract provides an express exception to liability or a limitation of liability in respect of the goods subject to the bill of lading, this provision should be available to protect anyone whom the carrier employs in the course of the performance of the contract, whether a servant or some other person not a servant, who is performing the carrier's obligations. In the past, where questions of business convenience have arisen, the courts have not been slow to treat cases not in terms within an exception as coming within it, if rigid adherence to the exact words would produce extraordinary results. There is a commercial basis for the appellants' contentions, even when there is no contractual nexus. Thus in a common form insurance policy an underwriter often enters into a contract for the benefit of someone who was never in contractual relation with the seller of the goods insured. Difficulties of privity of contract also arise in bills of exchange.

There is nothing in *Dunlop's* case [34] binding the House of Lords to say that carriage of goods by sea is not an exception to the principle there laid down. The strict ratio decidendi of that case was " no consideration," which imports nothing contrary to the appellants' contentions here. Despite what Lord Haldane seemed to say in *Dunlop's* case,[34] a person can contract in the same contract both as principal and agent, though not, of course, in respect of the same subject-matter. In the present case the consideration for the contract was the moving of the goods by the appellants and their exposing themselves to an action for damages for the negligence of the persons who performed it: see *Shadwell* v. *Shadwell* [35] and *Scotson* v. *Pegg.*[36]

On the true construction of the bill of lading and the Hague Rules the appellants as stevedores are entitled to the benefit of the $500 limitation because " carriers " includes stevedores. The United States Act has been incorporated into the contract and the American decision already cited is against the appellants. That would be fatal against them if it were not that the Act was enacting an international convention which has also been enacted in England and pronounced on by the English courts. See the

[33] 21 Ll.L.R. 375.
[34] [1915] A.C. 847.
[35] (1860) 9 C.B.N.S. 159.
[36] (1861) 6 H. & N. 295.

458                    HOUSE OF LORDS                **[1962]**

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

Hague Rules as set out in the Schedule to the Carriage of Goods
by Sea Act, 1924, article I, article II, article III, rules 3, 5 and 7,
article IV, rules 1 and 3, article V and article VI; and see the
introduction to the Act in Scrutton on Charterparties, 16th ed.,
p. 455. The expression " carrier " must be taken to include the
carrier's agents.

Taking the provisions of the bill of lading, the final result is
that it does enure to protect the stevedores, even though they
are not parties to the contract. A stevedore can be a bailee. If
stevedores receive goods from shipowners for the purposes for
which the appellants received these goods, they have enough
exclusive right to amount to a bailment, enough to entitle them
to take advantage of the limitation under the bill of lading.

There was an implied contract between the respondents and
the appellants. Under the bill of lading the Hague Rules are to
govern the contract. It is as if there were a label attached to
the effect that the goods were carried, loaded and discharged on
Hague Rules terms. In clause 17 there is express authority to
appoint stevedores, and it must be taken that whenever goods are
loaded or discharged by stevedores, it is on the terms of the bill
of lading. Everyone giving vicarious performance of the contract
will be entitled to perform it on terms of the bill of lading. That
is supported by the *Pyrene* case.[37] The consideration here was
the handling of the drum by the appellants.

Even if the appellants are held not to be parties to the con-
tract, they can still use it as a defence: see *Smith and Snipes
Hall Farm Ltd.* v. *River Douglas Catchment Board*[38] and *Drive
Yourself Hire Co. (London) Ltd.* v. *Strutt.*[39]  *Green* v. *Russell*,[40]
which made it impossible to argue this point in the Court of
Appeal, expresses the other view. It is still part of the common
law that a party who is a stranger to a contract can yet take
advantage of it, although he is not a party to it, if it affords him
some protection. There is a principle engrafted onto the common
law, which has not been reversed by *Dunlop's* case,[41] by which,
where two persons have provided by contract that in certain
circumstances X shall not be liable in damages to one of them, X
may take advantage of that contract. It is admitted that *In re*

[37] [1954] 2 Q.B. 402.
[38] [1949] 2 K.B. 500, 513–515.
[39] [1954] 1 Q.B. 250, 272–273;
[1953] 3 W.L.R. 1111; [1953] 2 All
E.R. 1475, C.A.

[40] [1959] 2 Q.B. 226, 232–233, 239–
240; [1958] 3 W.L.R. 371; [1958] 3
All E.R. 44, C.A.
[41] [1915] A.C. 847.

*Schebsman* [42] is to the opposite effect of the propositions of Lord Denning in the cases relied on by the appellants on this point. The old cases are *Dutton* v. *Poole*,[43] *Bourne* v. *Mason* [44] and *Price* v. *Easton*.[45] *Tweddle* v. *Atkinson* [46] is the first expression of the other view. There is nothing in any of the early cases which would prevent a person not a party to a contract from taking advantage of a provision inserted in it for his protection. None of the relevant cases support the respondents' propositions. A stranger to a bill of lading can rely on an exemption in his favour. *Dunlop's* case [47] does not impinge on *Elder, Dempster*.[48] Nothing in it touches the principle that the clause here relied on can be used by the appellants as a shield, if not as a sword. This appeal can be decided in favour of the appellants by keeping *Dunlop's* case [49] within the confines of the matters to which the decision was directed, namely, that one cannot sue on a contract when no consideration has moved from the plaintiffs to the defendants.

*Ashton Roskill Q.C.* and *Michael Kerr Q.C.* for the respondent company. The respondents take their stand on orthodoxy. That is the correct approach. Departure from it is not justified and would necessarily produce confusion in the law, since those who make contracts are entitled to have their meaning ascertained in accordance with established legal principle. This case must be decided on the fundamental and elementary principle long enshrined in the common law and recapitulated in *Dunlop's* case,[49] namely, that only a person who is a party to a contract can sue on it. It is more important that the law should be clear than that it should be clever. On this principle the law is clear. The law is not perfect and it may sometimes produce hardship and inconvenience, which from time to time are, as circumstances change, corrected by the intervention of Parliament; for example, by the Carriage of Goods by Sea Act, 1924, or by the Civil Aviation Act, 1949. But there is no ground for not applying the well-established rule that a third party cannot take advantage of a contract, to which he is not a party, whether as a sword or as a shield. *Elder, Dempster* [50] is not to be taken as providing an exception to the rule in *Dunlop's* case.[51] Lying at the root of

H. L. (E.)
1961
MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

[42] [1944] Ch. 83; 60 T.L.R. 128; [1943] 2 All E.R. 768, C.A.
[43] (1678) 2 Lev. 210.
[44] (1669) 1 Vent. 6.
[45] (1833) 4 B. & Ad. 433.
[46] (1861) 1 B. & S. 393.
[47] [1915] A.C. 847.
[48] [1924] A.C. 522.
[49] [1915] A.C. 847.
[50] [1924] A.C. 522.
[51] [1915] A.C. 847.

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

the appellants' case is the necessity to put the decision in
*Dunlop's* case [51] on the basis of its own particular facts and to
elevate *Elder, Dempster* [52] into a rule, but the opposite is right;
*Elder, Dempster* [52] does not lay down a rule; *Dunlop's* case [53]
does. The rule of law suggested by the appellants to derive from
*Elder, Dempster* [54] has no pride of ancestry and should have no
hope of posterity.

In this bill of lading there is no reference at all to stevedores
in the " short form." In the " long form " the sole reference
is in clause 17 and then only in contradistinction to the carrier.
There is a basic confusion of thought in the appellants' concep-
tion of agency. Contracts of this kind are sometimes said to be
contracts which can be vicariously performed. But almost all
contracts can be performed by a third party; the original party
remains liable and the third party is not concerned with the terms,
beneficial or otherwise, of the contract between the other parties.
Here the only two contracts are (1) that between the shipowners
and the consignees, and (2) that between the shipowners and the
stevedores, with which the consignees had nothing to do.

In *Robert C. Herd & Co. Inc.* v. *Krawill Machinery Corpora-
tion* [55] the United States Supreme Court held on indistinguishable
facts that stevedores are not within the expression " carrier "
under the United States Act. In *Adler* v. *Dickson* [56] Denning
L.J. expressed the opinion that Parliament must have intended
stevedores to have the benefit of the limitations in the Carriage
of Goods by Sea Act, 1924. That was not necessary for the
decision of the case. But, in any event, this is a matter of
statutory interpretation. When that Act, incorporating the Hague
Rules, was passed, stevedores were not unknown and, if it had
been intended to include them, they could and would have been
named.

*Cavalier* v. *Pope* [57] is relied on. See also *Vandepitte* v.
*Preferred Accident Corporation of New York.* [58]

There is no distinction in principle between the right to sue
on a contract and the right to rely on it in defence as a source of
protection. In either case the party relying on it is setting it
up and that is something which a third party cannot do. The

51 [1915] A.C. 847.
52 [1924] A.C. 522.
53 [1915] A.C. 847.
54 [1924] A.C. 522.
55 359 U.S. 297; [1959] 1 Lloyd's
Rep. 305.
56 [1955] 1 Q.B. 158, 182.
57 [1906] A.C. 428; 22 T.L.R. 648,
H.L.
58 [1933] A.C. 70, 79; 49 T.L.R.
90, P.C.

H. L. (E.)

1961

———

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

———

" shield " concept is not an exception to the *Dunlop* [59] principle. See also *Tweddle* v. *Atkinson*,[60] *per* Wightman and Crompton JJ. (There are certain passages in the Law Journal report which are not in the other report.)

As to the appellants' submissions, the respondents agree to (1) and (2). As to submission (3), it is false emphasis to speak of " contemplated vicarious performance," since even personal contracts can be so performed. In submission (4) " agents " is a misnomer and " sub-bailees " defies definition. The mere handling of goods does not create a bailment. For there to be a bailment there must be exclusive possession. As to submission (5), one does not drop a drum in any particular capacity; one just drops it. The respondents agree submission (6), but not submission (7).

It is said by the appellants that the contract contended for by them emerges by implication. It is always possible to infer a contractual nexus; but whether such inference falls to be drawn must turn on the facts of the particular case: see the *Pyrene* case.[61] There must be some fact from which the necessary contractual nexus can be inferred. When one is trying to establish a contractual nexus the test of business necessity is elusive. Here there are no facts from which any contract between the respondents and the appellants can be inferred. The appellants were acting under the contract between themselves and the shipowners, a contract about which the respondents knew nothing. The appellants may have made the wrong contract, but this affords no reason why the respondents' rights should not be determined according to established principles of law. In certain cases, on all the facts and documents, the position may arise that a contractual nexus may be inferred, but that is not the case here. It depends on the facts, and the facts here do not give rise to the necessity of the alleged nexus. In this case the appellants are in difficulties because, if they are right, the shippers at the time of the bill of lading must have made two contracts, one with the shipowners and another with the stevedores.

No authority precludes the owner of a chattel tortiously damaged through a breach of duty from suing the tortfeasor, unless he has by contract debarred himself from doing so. Apart from a contractual nexus enabling the party sued to take advantage of a restrictive provision in a contract between the plaintiff

---

[59] [1915] A.C. 847.
[60] 1 B. & S. 393, 397–398; 30 L.J.
Q.B. 265, 266, 267.

[61] [1954] 2 Q.B. 402.

H. L. (E.)    and some other person, the rule of law must prevail, unless the
1961    case falls within well-recognised exceptions. *The Kite* [62] does not
━━━━━    support the rule for which the appellants here contend.   There
MIDLAND    Langton J. said that *Elder, Dempster* [63] was no help.   The
SILICONES    passage in *The Kirkness* [64] relied on by the appellants was obiter
LTD.    and is of no help here.   What Scrutton L.J. said in *Elder,*
*v.*    *Dempster* [65] and in *Mersey Shipping and Transport Co. Ltd. v.*
SCRUTTONS    *Rea Ltd.* [66] was wrong.   Even if there were no authorities in the
LTD.    respondents' favour, a rule of law such as that suggested by the
━━━━━    appellants will not be adopted because of a mere negative.   More-
over, there is authority for the respondents in the divergence of
view between Bankes and Scrutton L.JJ. in the *Mersey Shipping*
case.[66]   By seeking to invoke the rule they rely on to escape from
their common law liability for negligence the appellants accept
the onus of establishing their proposition.   The respondents rely
on *Hamzeh Malas & Sons v. British Imex Industries Ltd.* [67]

The *Elder, Dempster* case [68] was anomalous and contrary to
principle.   Reliance is placed on what Diplock J. said about it
in the present case.[69]   It is to be noted that in the *Elder,*
*Dempster* case [70] emphasis is laid on the possession by the ship
of the cargo.   As to the terms of the bailment there, see *per*
Lord Sumner.[71]   It is possible to extract from what Lord Cave
said some agreement with what Scrutton L.J. said in the Court
of Appeal, though this is only a possibility; Lord Finlay used
different language.[72]   Diplock J. in the present case [73] refused to
equate Lord Finlay's observations with Lord Cave's.

Reliance is placed on the *Vita Food* case [74] and on *Wilson* v.
*Darling Island Stevedoring and Lighterage Co. Ltd.*[75]   From the
latter case it appears that a contract may be made with one com-
pany for one part of the journey and with another company for
the other part.   See also *Gilbert Stokes & Co. Proprietary Ltd.*
v. *Dalgety & Co. Ltd.*[76]   As to the topic of ratio decidendi, see
*Great Western Railway Co. v. Mostyn (Owners).*[77]

[62] [1933] P. 154.
[63] [1924] A.C. 522.
[64] [1957] P. 51.
[65] [1923] 1 K.B. 420.
[66] 21 Ll.L.Rep. 375.
[67] [1958] 2 Q.B. 127, 129; [1958] 2 W.L.R. 100; [1958] 1 All E.R. 262, C.A.
[68] [1924] A.C. 522.
[69] [1959] 2 Q.B. 171, 187.
[70] [1924] A.C. 522.
[71] Ibid. 534.
[72] Ibid. 547–548.
[73] [1959] 2 Q.B. 171, 186.
[74] [1939] A.C. 277, 301.
[75] 95 C.L.R. 43, 68–69; [1956] 1 Lloyd's Rep. 346, 358.
[76] [1948] S.R.(N.S.W.) 435; 81 Ll.L.Rep. 337.
[77] [1928] A.C. 57, 73; 44 T.L.R. 179, H.L.

**A.C.**                    AND PRIVY COUNCIL.                    463

No authoritative view emerges that in *Elder, Dempster* [78] there was a majority decision for the principle of vicarious exemption from liability for tort. The facts of that case were infinitely removed from those of the present case: see *Adler's* case [79] and *Wilson* v. *Darling Island Stevedoring and Lighterage Co. Ltd.*[80] If no previous legal ground can be ascertained on which to found immunity for the stevedores here, there is a high probability that no such legal ground exists. To find for the appellants it would be necessary to reject *Robert C. Herd & Co. Inc.* v. *Krawill Machinery Corporation* [81] in the United States, *Wilson* v. *Darling Island Stevedoring and Lighterage Co. Ltd.*[82] in Australia, *Adler's* case,[83] *Cosgrove's* case [84] and *Green's* case.[85] So remarkable an exercise in forensic iconoclasm should not be approved in this House.

International decisions on the Hague Rules should develop on parallel and not divergent lines: *Stag Line Ltd.* v. *Foscolo Mango & Co. Ltd.*,[86] *Riverstone Meat Co. Pty. Ltd.* v. *Lancashire Shipping Co. Ltd.*[87] and Scrutton on Charterparties, 16th ed., p. 453.

If the so-called *Elder, Dempster* [88] rule existed, it would confer rights on servants and agents, but it does not: see *Earl* v. *Lubbock* [89] and *Donoghue* v. *Stevenson.*[90] There is neither logic nor authority for limiting it to carriage of goods by sea.

The appellants had no exclusive possession of the respondents' drum, because there was no bailment: see Pollock and Wright on Possession, pp. 20–21. There was no bailment, because the appellants were only performing the shipowners' functions in and about the discharge of the goods. As to exclusive possession, see *Hobson* v. *Impett.*[91] The gist of the matter is that the mere handling of goods does not give possession in law. Clause 4 of the bill of lading ("long form") does not make the appellants bailees.

There is here no consideration for the alleged contract moving from the appellants to the respondents. The consideration alleged

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

---

[78] [1924] A.C. 522.
[79] [1955] 1 Q.B. 158, 195, 199–200.
[80] 95 C.L.R. 43, 80; [1956] 1 Lloyd's Rep. 346, 363.
[81] 359 U.S. 297; [1959] 1 Lloyd's Rep. 305.
[82] 95 C.L.R. 43; [1956] 1 Lloyd's Rep. 346.
[83] [1955] 1 Q.B. 158.
[84] 175 L.T. 334.
[85] [1959] 2 Q.B. 227.

[86] [1932] A.C. 328, 350; 48 T.L.R. 127, H.L.
[87] [1961] A.C. 807, 840; [1961] 2 W.L.R. 278; [1961] 1 All E.R. 495, H.L.
[88] [1924] A.C. 522.
[89] [1905] 1 K.B. 253, 256; 21 T.L.R. 71, C.A.
[90] [1932] A.C. 562, 575, 591; 48 T.L.R. 494, H.L.
[91] [1957] Crim.L.R. 476, D.C.

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

is the handling of the drum, but that was not done in respect of, or as the price for, the respondents' alleged agreement to exempt the appellants from liability for damage over $500. There was no request by the respondents to the appellants: see *Combe* v. *Combe*.[92] The reasoning in that case can be applied to the handling of goods or to the driving of a bus, as in *Cosgrove's* case.[93] See also *Dunlop's* case.[94] If here there was a contract between the appellants and the respondents, its terms must have included the provision that the appellants or any other stevedores should do the handling in consideration of, or partly in consideration of, or as the price of, the respondents' alleged promise to such stevedores. That consideration could only arise in the present case by implication. Even if an express contract could be found, a provision for limitation of liability could only be imported by implication into the contract between the appellants and the respondents. On the facts of this case any such implication is impossible. The appellants never handled the drum in consideration of any such promise.

The observations of Denning L.J. in *Smith and Snipes Hall Farm Ltd.* v. *River Douglas Catchment Board*[95] and *Drive Yourself Hire Co. (London) Ltd.* v. *Strutt*[96] with regard to a third party's right to enforce a contract go too far. They should be reconsidered because the expressions " benefit " and " interest " introduce uncertainty into the consideration of the rights and obligations of persons in contractual relationship. The words have no precise meaning in the law of contract.

The conception of " participating " in a contract to which one is not a party, expressed by Devlin J. in the *Pyrene* case[96a] and by Denning L.J. in *Adler* v. *Dickson*,[97] is too vague and is unsupported as a legal proposition.

*Eustace Roskill Q.C.* in reply. There is nothing in any decided case which would prevent this appeal being allowed. *Elder, Dempster*[98] blazed the trail. Appeals to orthodoxy get one nowhere. The question is not what *Dunlop's* case[99] decided, but whether *Elder, Dempster*[100] can be rationalised in any other way than in accordance with the appellants' submissions. One must find its ratio decidendi. As to the duty of seeing what are the

[92] [1951] 2 K.B. 215, 226–227; [1951] 1 T.L.R. 811; [1951] 1 All E.R. 707, C.A.
[93] 175 L.T. 334.
[94] [1915] A.C. 847, 855.
[95] [1949] 2 K.B. 500, 514–515.

[96] [1954] 1 Q.B. 250, 272–273.
[96a] [1954] 2 Q.B. 402, 426.
[97] [1955] 1 Q.B. 158, 182–183.
[98] [1924] A.C. 522.
[99] [1915] A.C. 847.
[100] [1924] A.C. 522.

**A.C.**                    AND PRIVY COUNCIL.                    465

reasons of a decision of the House of Lords, see *Workington Harbour and Dock Board* v. *Towerfield (Owners).*[101] In *Elder, Dempster* [102] there is some support for Lord Cave's view among the other Lords.    Lord Finlay said the same thing in slightly different words.    Lord Carson agreed with them both.    There was not one word of criticism of what Scrutton L.J. had said in the Court of Appeal.    In the *Mersey Shipping* case [103] he repeated what he had said in *Elder, Dempster.*[104]    The observations of Lord Sumner in *Elder, Dempster* [104] relied on by the respondents are no more than a dictum.

It is not true that there is no difference between enforcing a contract and relying on it as a defence.    An exemption may be relied on as a defence by a person who could not sue on the contract.    It can be used as a shield and not a sword.    The whole essence of *Elder, Dempster* [104] is that this is a shield.

*Cosgrove's* case [105] was wrongly decided.

The question of promoting uniformity between English and United States decisions does not arise in finding what the House of Lords decided in *Elder, Dempster.*[106]

For the meaning of " sub-bailee," see Pollock and Wright on Possession, p. 169.

As to the question of limiting the *Elder, Dempster* [106] rule to carriage of goods by sea, no difficulty arises: see *per* Denning L.J. in *Adler's* case.[107]

Their Lordships took time for consideration.

December 6.    VISCOUNT SIMONDS.    My Lords, the facts in this case are not in dispute.    They are fully and accurately stated in the judgment of the learned trial judge, Diplock J., and I do not think it necessary to restate them.    I come at once to the question of law which arises upon them.

The question is whether the appellants, a well-known firm of stevedores, who admittedly by their negligence caused damage to certain cargo consigned to the respondents under a bill of lading of March 26, 1957, can take advantage of a provision for limitation of liability contained in that document.    In judgments, with which I entirely agree and to which, but for the importance

H. L. (E.)

1961

———

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

———

· [101] [1951] A.C. 112, 157; 66 T.L.R. (Pt. 2) 387; [1950] 2 All E.R. 414, H.L.
[102] [1924] A.C. 522.
[103] 21 Ll.L.R. 375.
[104] [1924] A.C. 522.
[105] 175 L.T. 334.
[106] [1924] A.C. 522.
[107] [1955] 1 Q.B. 158.

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
v.
SCRUTTONS
LTD.

Viscount
Simonds.

of the case, I should not think it necessary to add anything, the learned judge and the Court of Appeal have unanimously answered the question in the negative.

The appellants' claim to immunity (for so I will call it for short) was put in a number of different ways, but I think that I do no injustice to the able argument of their counsel if I say that he rested in the main on the well-known case of *Elder, Dempster & Co. Ltd.* v. *Paterson, Zochonis & Co. Ltd.*,[1] contending that that is an authority binding this House to decide in his favour.

Let me, then, get rid shortly of some of the other arguments advanced on behalf of the appellants.

In the first place, I see no reason for saying that the word "carrier" either in the bill of lading or in the United States Carriage of Goods by Sea Act, 1936 (which the bill of lading incorporated) means or includes a stevedore. This is a proposition which does not admit of any expansion. A stevedore is not a carrier according to the ordinary use of language and, so far from the context supplying an extended meaning to the latter word, the contrary is indicated, as Hodson L.J. points out,[2] by clause 17 of the bill of lading which authorises the carrier or master to appoint stevedores.

Then, to avert the consequences which would appear to follow from the fact that the stevedores were not a party to the contract conferring immunity on the carriers, it was argued that the carriers contracted as agents for the stevedores. They did not expressly do so: if then there was agency, it was a case of an agent acting for an undisclosed principal. I am met at once by the difficulty that there is no ground whatever for saying that the carriers were contracting as agent either for this firm of stevedores or any other stevedores they might employ. The relation of the stevedores in this case to the carriers was that of independent contractors. Why should it be assumed that the carriers entered into a contract of affreightment or into any part of it as agents for them?

Next it was urged that there was an implied contract between the cargo owners, the respondents, and the stevedores that the latter should have the benefit of the immunity clause in the bill of lading. This argument presents, if possible, greater difficulties. When A and B have entered into a contract, it is not uncommon to imply a term in order to give what is called "business

---

[1] [1924] A.C. 522; 40 T.L.R. 464, H.L.

[2] [1961] 1 Q.B. 106, 119; [1960] 3 W.L.R. 372; [1960] 2 All E.R. 737, C.A.

" efficacy " to it—a process, I may say, against the abuse of
which the courts must keep constant guard. But it is a very
different matter to infer a contractual relation between parties
who have never entered into a contract at all. In the present
case the cargo owners had a contract with the carrier which
provided amongst other things for the unloading of their cargo.
They knew nothing of the relations between the carrier and the
stevedores. It was no business of theirs. They were concerned
only to have the job done which the carriers had contracted to
do. There is no conceivable reason why an implication should
be made that they had entered into any contractual relation
with the stevedores.

But, my Lords, all these contentions were but a prelude to
one which, had your Lordships accepted it, would have been the
foundation of a dramatic decision of this House. It was argued,
if I understood the argument, that if A contracts with B to do
something for the benefit of C, then C, though not a party to
the contract, can sue A to enforce it. This is independent of
whether C is A's undisclosed principal or a beneficiary under a
trust of which A is trustee. It is sufficient that C is an " inter-
" ested person." My Lords, if this is the law of England, then,
subject always to the question of consideration, no doubt, if the
carrier purports to contract for the benefit of the stevedore, the
latter can enforce the contract. Whether that premiss is satisfied
in this case is another matter, but, since the argument is advanced,
it is right that I should deal with it.

Learned counsel for the respondents met it, as they had
successfully done in the courts below, by asserting a principle
which is, I suppose, as well established as any in our law, a
" fundamental " principle, as Lord Haldane called it in *Dunlop
Pneumatic Tyre Co. Ltd.* v. *Selfridge & Co. Ltd.*,[3] an " elemen-
" tary " principle, as it has been called times without number,
that only a person who is a party to a contract can sue upon it.
" Our law," said Lord Haldane, " knows nothing of a jus
" quaesitum tertio arising by way of contract." Learned counsel
for the respondents claimed that this was the orthodox view and
asked your Lordships to reject any proposition that impinged
upon it. To that invitation I readily respond. For to me
heterodoxy, or, as some might say, heresy, is not the more
attractive because it is dignified by the name of reform. Nor will
I easily be led by an undiscerning zeal for some abstract kind of

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

Viscount
Simonds.

[3] [1915] A.C. 847, 853; 31 T.L.R. 399, H.L.

468                          HOUSE OF LORDS                    **[1962]**

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

Viscount
Simonds.

justice to ignore our first duty, which is to administer justice
according to law, the law which is established for us by Act of
Parliament or the binding authority of precedent.  The law is
developed by the application of old principles to new circum-
stances.  Therein lies its genius.  Its reform by the abrogation of
those principles is the task not of the courts of law but of
Parliament.  Therefore I reject the argument for the appellants
under this head and invite your Lordships to say that certain
statements which appear to support it in recent cases such as
*Smith and Snipes Hall Farm Ltd.* v. *River Douglas Catchment
Board* [4] and *White* v. *John Warwick & Co. Ltd.*[5] must be rejected.
If the principle of jus quaesitum tertio is to be introduced into our
law, it must be done by Parliament after a due consideration of
its merits and demerits.  I should not be prepared to give it my
support without a greater knowledge than I at present possess of
its operation in other systems of law.

   I come finally to the case which is said to require us to decide
in favour of the appellants.  The *Elder, Dempster* case [6] has been
the subject of so much analytical criticism, and so many different
conclusions, that one may well despair of finding out what was
decided by which of the five noble and learned Lords who took
part in it.  In the course of the discussion before your Lordships
my mind turned to what was said by Lord Dunedin (who was
himself a party to the *Elder, Dempster* decision [6]) some four years
later in *Great Western Railway Co.* v. *Mostyn (Owners).*[7]  He
said: " . . . if from the opinions delivered it is clear—as is the
" case in most instances—what the ratio decidendi was which led
" to the judgment, then that ratio decidendi is also binding.
" But, if it is not clear, then I do not think it is part of the
" tribunal's duty to spell out with great difficulty a ratio decidendi
" in order to be bound by it.  That is what the Court of Appeal
" has done here.  With great hesitation they have added the
" opinion of Lord Hatherley to that of Lord Cairns and then,
" with still greater difficulty, that of Lord Blackburn, and so have
" secured what they think was a majority in favour of Lord
" Cairns' very clear view.  I do not think that the respect which
" they hold and have expressed for the judgments of your Lord-
" ships' House compelled them to go through this difficult and
" most unsatisfactory performance."

   [4] [1949] 2 K.B. 500; 65 T.L.R.          [6] [1924] A.C. 522.
628; [1949] 2 All E.R. 179, C.A.           [7] [1928]  A.C.  57,  73–74;  44
   [5] [1953] 1 W.L.R. 1285; [1953] 2   T.L.R. 179, H.L.
All E.R. 1021, C.A.

**A.C.**                    AND PRIVY COUNCIL.                    469

My Lords, Lord Dunedin's was a dissenting speech and at a later date this House was able to ascertain the principle which was decided by that case and the case that he was discussing, *River Wear Commissioners* v. *Adamson* [8] (see *Workington Harbour and Dock Board* v. *Towerfield (Owners)* [9]). But that does not, I think, detract from the value and importance of his observations upon the ascertainment of the ratio decidendi of a decision which is said to bind this House. I would cast no doubt upon the doctrine of stare decisis, without which law is at hazard. But I do reserve the right at least to say of any decision of this House that it does not depart from a long-established principle, and particularly does not do so without even mentioning it, unless that is made abundantly clear by the majority of the noble Lords who take part in it. When, therefore, it is urged that the *Elder, Dempster* case [10] decided that, even if there is no general exception to what I have called the fundamental rule that a person not a party to a contract cannot sue to enforce it, there is at least a special exception in the case of a contract for carriage of goods by sea, an exception which is to be available to every person, servant or agent of the contracting party or independent contractor, then I demand that that particular exception should be plainly deducible from the speeches that were delivered. Nor should I forget the warning given by Lord Halsbury in *Quinn* v. *Leathem* [11] in a passage quoted by Diplock J. in this case,[12] which I need not repeat. For it is undeniable that the facts in *Elder, Dempster* [13] which enabled the House to hold that both shipowners and charterers could take advantage of a provision in a bill of lading, are remote from the facts of the present case. The question, then, is whether there is to be extracted from *Elder, Dempster* [13] a decision that there is in a contract for carriage of goods by sea a particular exception to the fundamental rule in favour of all persons including stevedores and, presumably, other independent contractors. This question must clearly, in my opinion, be answered in the negative.

In the course of this opinion I have already borrowed freely, without acknowledgment, from the judgment of the late Fullagar J.

H. L. (E.)

1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

Viscount
Simonds.

---

[8] (1877) L.R. 2 App.Cas. 743, H.L.
[9] [1951] A.C. 112, 157; 66 T.L.R. (Pt. 2) 387; [1950] 2 All E.R. 414, H.L.
[10] [1924] A.C. 522.

[11] [1901] A.C. 495, 506; 17 T.L.R. 749, H.L.
[12] [1959] 2 Q.B. 171, 187; [1959] 2 W.L.R. 761; [1959] 2 All E.R. 289.
[13] [1924] A.C. 522.

H. L. (E.)
1961

MIDLAND
SILICONES
LTD.
*v.*
SCRUTTONS
LTD.

Viscount
Simonds.

in *Wilson* v. *Darling Island Stevedoring and Lighterage Co. Ltd.*,[14] and I shall say something more about that judgment presently. In the meantime I will quote a passage from it which expresses my own view of *Elder, Dempster*.[15] After referring to a passage in Carver on the Law of Carriage of Goods by Sea, 9th ed., at p. 294, that learned judge said[16]: " In my opinion, what the " *Elder, Dempster* case[17] decided, and all that it decided, is that " in such a case, the master having signed the bill of lading, the " proper inference is that the shipowner, when he receives the " goods into his possession, receives them on the terms of the bill " of lading. The same inference might perhaps be drawn in some " cases even if the charterer himself signed the bill of lading, but " it is unnecessary to consider any such question." This appears to me to be the only possible generalisation, or, if your Lordships think " rationalisation " an appropriate word, the only possible rationalisation of *Elder, Dempster*,[17] and it is a far cry from the circumstances to which it is sought to apply that decision in the present case.

I shall not further discuss *Elder, Dempster*[17] except to say two things. The first is that in so far as the case turned on a question of bailment (which I think it largely did) it has no relevance to the present case. For I agree with Diplock J.[18] in thinking that the appellants were not bailees " whether sub, bald, or " simple." Secondly, I must say a few words upon a passage, much relied on by the appellants, in the judgment of Scrutton L.J. in *Mersey Shipping and Transport Co. Ltd.* v. *Rea Ltd.*,[19] where he pronounced that the effect of the *Elder, Dempster* decision[20] was as follows: " . . . where there is a contract which contains an " exemption clause, the servants or agents who act under that " contract have the benefit of the exemption clause. They cannot " be sued in tort as independent people, but they can claim the " protection of the contract made with their employers on whose " behalf they are acting." The observation was admittedly obiter and Bankes L.J., who sat with Scrutton L.J., clearly did not agree with it. Nor do I agree with it: that follows from what I have already said. And, with all deference to a very learned judge, I do not think that the use of the word " independent " is felicitous. If the cargo owner sues a stevedore for negligence, he

[14] (1955) 95 C.L.R. 43; [1956] 1 Lloyd's Rep. 346.
[15] [1924] A.C. 522.
[16] 95 C.L.R. 43, 78; [1956] 1 Lloyd's Rep. 346, 364.
[17] [1924] A.C. 522.
[18] [1959] 2 Q.B. 171, 189.
[19] (1925) 21 Ll.L.R. 375, D.C.
[20] [1924] A.C. 522.